2014-1354

_____

UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

_____

JBF RAK LLC,

Plaintiff - Appellant

v.

UNITED STATES,

Defendant - Appellee

MITSUBISHI POLYESTER FILM, INC., SKC INC,

Defendants

_____

Appeal from the United States Court of International Trade in case no.
11-CV-00141, Senior Judge Judith M. Barzilay

_____

**BRIEF OF PLAINTIFF-APPELLANT JBF RAK LLC AND JOINT
APPENDIX**

_____

Jack D. Mlawski
Galvin & Mlawski
245 Fifth Avenue
Suite 1902
New York, NY 10016
Tel: (212) 679-1500

*Counsel for Plaintiff- Appellant JBF RAK LLC*

Form 9

FORM 9. Certificate of Interest

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

JBF RAK LLC                                      v. UNITED STATES

No. 14-1354

## CERTIFICATE OF INTEREST

Counsel for the (petitioner) (<u>appellant</u>) (respondent) (appellee) (amicus) (name of JBF RAK LLC _____ certifies the following (use "None" if applicable; use extra sheets if necessary):

1.     The full name of every party or amicus represented by me is:

JBF RAK LLC

2.     The name of the real party in interest (if the party named in the caption is not the real party in interest) represented by me is:

JBF RAK LLC

3.     All parent corporations and any publicly held companies that own 10 percent or more of the stock of the party or amicus curiae represented by me are:

JBF RAK is a limited liability company registered in the Emirate of Ras Al Khaimah, UAE
Affiliated Parties. JBF Industry Limited, India is the holding company of JBF Global Pte. Ltd, Singapore, which is a publicly listed company in INDIA. JBF Global Pte. Ltd, Singapore is the parent company of JBF RAK LLC.

4. The names of all law firms and the partners or associates that appeared for the party or amicus now represented by me in the trial court or agency or are expected to appear in this court are:

JACK MLAWSKI, GALVIN & MLAWSKI

June 19, 2014
Date

/s/JACK MLAWSKI
Signature of counsel

JACK MLAWSKI
Printed name of counsel

Please Note: All questions must be answered
cc: _____

124

# TABLE OF CONTENTS

**1. STATEMENT OF RELATED CASES**......................................................1

**2. JURISDICTIONAL STATEMENT**........................................................1

**3. STATEMENT OF THE ISSUES**............................................................1

**4. STATEMENT OF THE CASE**...............................................................2

**5. STATEMENT OF THE FACTS**.............................................................2

**6. SUMMARY OF THE ARGUMENT**.......................................................3

**7. STANDARD OF REVIEW**...................................................................6

**8. INTRODUCTION**................................................................................7

**9. ARGUMENT**....................................................................................11

**I.** The *Union Steel* Analysis Is Fundamentally Flawed As It Conflicts With 19 USC Section 1677f-1(d)(1), The Congressional Intent Demonstrated In The Legislative History and the Underlining Rationale for Zeroing...............................................................11

    **A.** The Underlying Purpose of Zeroing is to Prevent Potential Masking of Dumped Sales WIthout Requiring Demonstration by Commerce that Masked (Targeted) Dumping Actually Exists.........................................12

    **B.** Contrary to *Union Steel* Zeroing Is As Necessary In Investigations As It Is in Reviews As Demonstrated By Congress' Enactment of 19 USC Section 1677f-1(d)(1)(B) and its Concerns Expressed In The Legislative History With Respect To The Average to Average Methodology and the Potential to Mask Dumped Sales. Further, Contrary to *Union Steel,* Zeroing Does Not Reveal Masked Dumping...........................................................14

i

**10. CONCLUSION** ............................................................................ 19

**JOINT APPENDIX**

## TABLE OF AUTHORITIES

## CASES

*Corus Staal BV v. Department of Commerce,* 395 F. 3d 1343 (Fed. Cir 2005)
.................................................................................................................. 9

*Dongbu Steel Co. v. United States*, 635 F.3d 1363 (Fed. Cir. 2011) ..................... passim

*Gold East Paper (Jiangsu) Co, Ltd, et al. v. United States*, 918 F.Supp.2d 1317 (2013) ............................................................................................................... 18

*JBF RAK LLC v. United States*, Slip Op. 14-2, 4 (CIT January 8, 2014) ............. 2, 3, 10

*JTEKT Corp. v. United States*, 642 F.3d 1378 (Fed. Cir. 2011) .......................... passim

*Mid Continental Nail Corp v United States*, 712 F.Supp. 2d 1370 (CIT 2010) ....... 6,18

*NSK Ltd. v. United States,* 510 F.3d 1375, 1377 (Fed.Cir.2007) ................................ 7

*PAM. S.p.A. v. United States*, 265 F. Supp. 2d 1362 (CIT 2003) ............................ 4, 12

*Timken Co. v. United States*, 354 F.3d 1334 (Fed. Cir. 2004) ........................... 4, 12, 15

*Union Steel v. United States, 713 F.3d 1101* (Fed. Cir. 2013) ............................ passim

## STATUTES

19 U.S.C. § 1677(35)........................................................................8, 9

19 USC Section 1677f-1(d)(1).............................................................passim

## OTHER

Antidumping Proceedings: Final Modification, 71 Fed. Reg. 77,722 (Dec. 27, 2006)..........................................................................5, 8, 15

*Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part*, 74 Fed. Reg. 68,229 (Dep't Commerce Dec. 23, 2009)....................................................................................2

*Polyethylene Terephthalate Film, Sheet, and Strip From the United Arab Emirates*, 75 Fed. Reg. 78,968 (Dep't Commerce Dec. 17, 2010)............................................2

*Polyethylene Terephthalate Film from the United Arab Emirates*, 76 Fed. Reg. 22867 (Dep't Commerce April 25, 2011).........................................2, 10

Uruguay Round Agreements Act, H.R. 103-826, Oct. 3, 1994, Statement of Administrative Action ...........................................................................6, 16

# 1. STATEMENT OF RELATED CASES

Counsel is aware of the following pending case that will be directly affected by a decision in this appeal:

*JBF RAK LLC v. United States and Dupont Teijin Films, Mitsubishi Polyester Film, Inc, SKC inc, and Toray Plastics(America), Inc*, United States Court of International Trade, Case no. 12-CV-00099

# 2. JURISDICTIONAL STATEMENT

This Court has jurisdiction pursuant to 28 U.S.C. 1295(a)(5) of this appeal of the final judgment of the United States Court of International Trade in *JBF RAK LLC v. United States*, case no. 11-CV-00141 ( January 8, 2014).

# 3. STATEMENT OF THE ISSUES

Whether this Court's decision in *Union Steel v. United States*, 713 F.3d 1101 (Fed. Cir. 2013) ("*Union Steel"*) should be overruled as it fails to correctly address the question poised by this Court in *Dongbu Steel Co. v. United States*, 635 F.3d 1363 (Fed. Cir. 2011) *("Dongbu")* and *JTEKT Corp. v. United States*, 642 F.3d 1378 (Fed. Cir. 2011) *("JTEKT")* - why is it a reasonable interpretation of the statute to zero in administrative reviews, but not in investigations?

## 4. STATEMENT OF THE CASE

This is an appeal of the decision of the United States Court of International Trade  in *JBF RAK LLC v. United States*, Slip Op. 14-2 (CIT January 8, 2014) sustaining Commerce's final antidumping duty administrative review determination in *Polyethylene Terephthalate Film, Sheet, and Strip From the United Arab Emirates Final Results*, 76 Fed. Reg. 22,867(Dep't Commerce Apr. 25, 2011).

## 5. STATEMENT OF FACTS

JBF RAK LLC ("JBF") is a manufacturer and exporter of PET Film from the United Arab Emirates. Upon request by JBF and interested parties, Commerce initiated an administrative review of the antidumping duty order on PET Film from the United Arab Emirates for the period of November 6, 2008, through October 31, 2009. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part*, 74 Fed. Reg. 68,229 (Dep't Commerce Dec. 23, 2009). Commerce published its preliminary results and assigned JBF a preliminary weighted average dumping margin of 4.76% *ad valorem. See Polyethylene Terephthalate Film, Sheet, and Strip From the United Arab Emirates*, 75 Fed. Reg. 78,968 (Dep't Commerce Dec. 17, 2010) (preliminary results). In the *Final Results*, JBF was assigned a weighted average dumping margin of 4.88% *ad valorem. See Final Results*, 76 Fed. Reg. 22,867(Dep't

Commerce Apr. 25, 2011)('*Final Results*"*).* In determining the dumping margin Commerce applied a calculation methodology known as zeroing, where only positive dumping margins were aggregated to determine the weighted average margin and those sales calculated as having negative margins (sales at non-dumped prices) were assigned a value of zero.

JBF contested Commerce's *Final Results* in the United States Court of International Trade which sustained Commerce's determination. The court held that "[g]iven that *Union Steel* is binding authority, the court must sustain Commerce's zeroing methodology in this case as a permissible interpretation of the statute." Further, the court stated that it did not consider new arguments by JBF challenging the decision in *Union Steel. JBF RAK LLC v. United States*, Slip Op. 14-2, 4 (CIT January 8, 2014). Jt. App. at 4.

Upon appeal, JBF petitioned this Court to hear this appeal initially *en banc.* JBF's petition was denied and the court ordered the case be heard by a panel. Jt. App. at 36.

## 6. SUMMARY OF THE ARGUMENT

This appeal involves the question whether Commerce properly calculated the antidumping duty margin in the subject review by using zeroing and as posited by this court in *Dongbu and JTEKT* - why is it a reasonable interpretation of the

statute to zero in administrative reviews, but not in investigations? JBF asserts that contrary to *Union Steel* there is no reasonable basis in this context for distinguishing reviews from investigations and *Union Steel* should be overruled.

"Zeroing" is Commerce's calculation methodology whereby only positive dumping margins (i.e., margins for sales of merchandise sold at dumped prices) are aggregated in determining the weighted average margin and negative margins (i.e., margins for sales of merchandise sold at non-dumped prices) are given a value of zero. The rationale for using zeroing in reviews and investigations is to address the potential for foreign companies to undermine the antidumping laws by masking dumped sales with higher priced sales. *Issues and Decision Memorandum for the Final Results* (Dep't Commerce, Apr 18, 2011), Jt. App. at 36 citing *Timken Co. v. United States*, 354 F.3d 1334, 1343(Fed. Cir. 2004); See also, *PAM. S.p.A. v. United States*, 265 F. Supp. 2d 1362, 1371 (CIT 2003).

*Union Steel* held that Commerce could properly continue to use zeroing in reviews. *Union Steel* concluded that the contradictory application of zeroing is justified because masked dumped sales are a concern in reviews and not in investigations where high prices offset low prices:

> Commerce's decision to use or not use the zeroing methodology reasonably reflects unique goals in differing comparison methodologies. In average-to-average comparisons, as used in investigations, Commerce examines average export prices;

zeroing is not necessary because high prices offset low prices within each averaging group. When examining individual export transactions, using the average-to-transaction comparison methodology, prices are not averaged and zeroing reveals masked dumping. This ensures the amount of antidumping duties assessed better reflect the results of each average-to-transaction comparison.8 Commerce's differing interpretation is reasonable because the comparison methodologies compute dumping margins in different ways and are used for different reasons. *Union Steel* at 1109 (Footnote omitted)(Emphasis added)

First, the conclusion that zeroing is "not necessary" with respect to the average to average methodology used in investigations is contradicted by Commerce's historical application of zeroing. Commerce only changed its practice to comply with a WTO panel determination. *Antidumping Proceedings: Final Modification*, 71 Fed. Reg. 77,722 (Dep't Commerce, Dec. 27, 2006).

Second, the conclusion that zeroing is "not necessary" with respect to the average to average methodology used in investigations is contradicted by 19 USC Section 1677f-1(d)(1)(B), and Congress' expressed concerns with respect to investigations and masked dumping. Because of Congress' concerns regarding masked dumping and the average to average methodology in investigations Congress enacted 19 USC Section 1677f-1(d)(1)(B) carving out an "exception" to the average to average methodology allowing Commerce to use an alternative methodology where masked dumping is found:

"[i]n part, the reluctance to use an average-to-average methodology has been based upon a concern that such a methodology could conceal "masked

dumping". In such situations, the exporter may sell at a dumped price to particular customers or regions, while selling at higher prices to other customers or regions." *Uruguay Round Agreements Act*, H.R. 103-826, Oct. 3, 1994, Statement of Administrative Action, p. 172.

Finally, *Union Steel* erroneously concludes that "[w]hen examining individual export transactions, using the average-to-transaction comparison methodology, prices are not averaged and zeroing reveals masked dumping". Commerce determines the existence of masked dumping or targeted dumping by conducting a multi-step statistical analysis, otherwise known as the Nails test derived from the decision in *Mid Continental Nail Corp v United States*, 712 F.Supp. 2d 1370, 1377-78(CIT 2010). Zeroing does not reveal masked dumping.

JBF, therefore, submits that *Union Steel* should be overruled as there is no justification for Commerce's contradictory application of zeroing.

## 7. STANDARD OF REVIEW

This Court reviews the Court of International Trade's determination de novo, stepping into its shoes and applying the same standard of review. Commerce's determination is upheld unless it is "unsupported by substantial evidence on the record, or otherwise not in accordance with law." *JTEKT Corp. v. United States*,

642 F.3d 1378, 1381 citing *SKF USA, Inc. v. United States*, 537 F.3d 1373, 1379

(Fed. Cir.2008), *NSK Ltd. v. United States,* 510 F.3d 1375, 1377 (Fed.Cir.2007).

## 8. INTRODUCTION

JBF submits that *Union Steel* erroneously held that although no longer used in

investigations the continued use of zeroing in reviews is justified because of the differing

comparison methodologies:

> Commerce's decision to use or not use the zeroing methodology reasonably reflects unique goals in differing comparison methodologies. In average-to-average comparisons, as used in investigations, Commerce examines average export prices; zeroing is not necessary because high prices offset low prices within each averaging group. When examining individual export transactions, using the average-to-transaction comparison methodology, prices are not averaged and zeroing reveals masked dumping. This ensures the amount of antidumping duties assessed better reflect the results of each average-to-transaction comparison.8 Commerce's differing interpretation is reasonable because the comparison methodologies compute dumping margins in different ways and are used for different reasons. *Union Steel* at 1109 (Footnote omitted)(Emphasis added)

Thus, *Union Steel* distinguishes investigations from reviews and justifies the continued use

of zeroing in reviews by the assertion that in investigations using the average to average

method zeroing is " not necessary" while in reviews zeroing reveals masked dumping.

This conclusion conflicts with the plain language of the statute, and clear congressional

intent expressed by the enactment of 19 USC Section 1677f-1(d)(1) providing for an

exception to the average to average method when masked dumping is determined in

investigations, the legislative history and Commerce's justification for use of zeroing.

"Zeroing" is Commerce's calculation methodology whereby only positive dumping margins (i.e., margins for sales of merchandise sold at dumped prices) are aggregated and negative margins (i.e., margins for sales of merchandise sold at non-dumped prices) are given a value of zero. The flip side of this coin is Commerce's "offsetting" methodology whereby the positive and negative dumping margins are all aggregated. *Dongbu*, 635 F.3d at 1366. Prior to December 27, 2006, Commerce used zeroing with average to average comparisons in investigations <u>as well as</u> in reviews and only changed its practice with respect to investigations to comply with a WTO panel determination. *Union Steel,* 713 F.3d at 1105 citing Antidumping Proceedings: Final Modification, 71 Fed. Reg. 77,722 (Dec. 27, 2006).

The issue here was first framed and addressed by this court in *Dongbu.* "The central question here is whether it is reasonable for Commerce to use zeroing in administrative reviews even though it no longer uses this methodology in investigations. We have repeatedly held that the pertinent statute—19 U.S.C. § 1677(35)—is ambiguous with respect to zeroing.....We have also held that because 19 U.S.C. § 1677(35) is applicable to both investigations and administrative reviews, it is equally ambiguous in both contexts. ....We have upheld Commerce's use of zeroing in both investigations and administrative reviews as a reasonable interpretation of this ambiguous statute; however, we have never considered

whether it is reasonable under the second step of *Chevron* for Commerce to use inconsistent interpretations of the same statutory language." (Citations omitted) *Dongbu*, 635 F.3d at 1369-1370. The reasonableness of Commerce's inconsistent interpretation was examined in light of the determination that "...this court has expressly adopted the position taken by the government in earlier cases that there is no statutory basis for interpreting 19 U.S.C. § 1677(35) differently in investigations than in administrative reviews. *Corus I, 395 F.3d at 1347*; Brief for Defendant-Appellee, Department of Commerce at 18, 23-24, *Corus I, 395 F.3d 1343 (Fed. Cir.2005) (No. 04-1107)*, *available at* 2004 WL 3768287 at *18, *23-24. " *Dongbu*, 635 F.3d at 1371.

The government's position in *Dongbu* was inconsistent interpretations are justified because it is required to comply with an adverse WTO decision on zeroing. In rejecting this the court held that "[i]n other words, the government's decision to implement an adverse WTO report standing alone does not provide sufficient justification for the inconsistent statutory interpretations. ... In addition, the government has not pointed to any basis in the statute for reading 19 U.S.C. § 1677(35) differently in administrative reviews than in investigations. Indeed, as noted above, it has previously argued the opposite. In the absence of sufficient reasons for interpreting the same statutory provision inconsistently, Commerce's action is arbitrary." *Dongbu*, 635 F.3d at 1372-1373

The government was given a second opportunity and failed to justify the continued use of zeroing in reviews in *JTEKT*. The government attempted to distinguish investigations and reviews by describing the different purposes and methodologies. In rejecting the explanation *JTEKT* held:

> While Commerce did point to differences between investigations and administrative reviews, it failed to address the relevant question—why is it a reasonable interpretation of the statute to zero in administrative reviews, but not in investigations? It is not illuminating to the continued practice of zeroing to know that one phase uses average-to-average comparisons while the other uses average-to-transaction comparisons. In order to satisfy the requirement set out in *Dongbu,* Commerce must explain why these (or other) differences between the two phases make it reasonable to continue zeroing in one phase, but not the other. Thus, we vacate and remand in order for Commerce to provide its reasoning. *JTEKT*, 642 F.3d at 1384-5.

Plaintiff JBF RAK LLC ("JBF") is a manufacturer and exporter of Polyethylene Terephthalate Film from the United Arab Emirates. JBF challenged the final results in the 2008 antidumping duty administrative review of Polyethylene Terephthalate Film from the United Arab Emirates issued by the U.S. Department of Commerce. *See Polyethylene Terephthalate Film from the United Arab Emirates*, 76 Fed. Reg. 22867 (Dep't Commerce April 25, 2011).

The trial court sustained Commerce's application of zeroing based upon the determination that *Union Steel* is binding authority. *JBF RAK LLC v. United States*, Slip Op. 14-2, 4 (CIT January 8, 2014).

## 9. ARGUMENT

## I. The *Union Steel* Analysis Is Fundamentally Flawed As It Conflicts With 19 USC Section 1677f-1(d)(1), The Congressional Intent Demonstrated In The Legislative History and the Underlining Rationale for Zeroing

Much of *Union Steel* explains the differences between the average to average methodology used in investigations and the average to transaction methodology used in reviews. *Union Steel* (we believe erroneously) explains why these differences make it reasonable to continue zeroing in one phase, but not the other:

> Commerce's decision to use or not use the zeroing methodology reasonably reflects unique goals in differing comparison methodologies. In average-to-average comparisons, as used in investigations, Commerce examines average export prices; zeroing is not necessary because high prices offset low prices within each averaging group. When examining individual export transactions, using the average-to-transaction comparison methodology, prices are not averaged and zeroing reveals masked dumping. This ensures the amount of antidumping duties assessed better reflect the results of each average-to-transaction comparison.[8] Commerce's differing interpretation is reasonable because the comparison methodologies compute dumping margins in different ways and are used for different reasons. *Union Steel* at 1109 (Footnote omitted)(Emphasis added)

JBF addresses these explanations by reviewing the underlying purpose of zeroing, 19 USC Section 1677f-1(d)(1), and the Congressional intent.

**A. The Underlying Purpose of Zeroing is to Prevent Potential Masking of Dumped Sales Without Requiring Demonstration by Commerce that Masked (Targeted) Dumping Actually Exists.**

The rationale for using zeroing in reviews and investigations is to address the potential for foreign companies to undermine the antidumping laws by masking dumped sales with higher priced sales. As stated by the Department in this review . Jt. App. at 32:

> The CAFC explained in Timken that denial of offsets is a "reasonable statutory interpretation given that it legitimately combats the problem of masked dumping, wherein certain profitable sales serve to mask sales at less than fair value." Timken, 354 F.3d at 1343. As reflected in that opinion, the issue of so-called masked dumping was part of the policy reason for interpreting the statute in the manner interpreted by the Department. No U.S. court has required the Department to demonstrate "masked dumping" before it is entitled to invoke this interpretation of the statute and deny offsets to dumped sales. See, e,g, Timken, 354 F.3d at 1343; see also NSK Ltd. v. United States, 510 F.3d 1375 (Fed. Cir. 2007).

See also PAM. S.p.A. v. United States, 265 F. Supp. 2d 1362, 1371 (CIT 2003):

> The underlying purpose for the practice of zeroing is articulated in *Serampore Industries*. The *Serampore* Court found that Commerce, in applying a zeroing methodology, had interpreted the statute "in such a way as to prevent a foreign producer from masking its dumping with more profitable sales." 11 CIT at 874, 675 F.Supp. at 1360-61. By offsetting positive and negative margins into a net margin, foreign producers could undermine U.S. law by strategically dumping merchandise in the United States. For instance, companies could purposefully dump but escape antidumping duties by setting the prices of their other sales to a level such that they offset the margin, thus averaging out the margins to a level of no dumping. *Def.'s Br.* at 21 n. 8.

Thus, the purpose of zeroing (denial of offsets) as stated by this Court, the Court of International Trade and Commerce is to prevent potential masking of dumped sales without requiring demonstration by Commerce that masked (targeted) dumping actually exists. To use a medical analogy where masked dumping is the disease, zeroing is the vaccination shot.[1]

---

[1] *Union Steel* observes with respect to reviews and assessments '[h]owever, "when it comes to setting the final rates to be used for actual assessment, i.e., the review rates, it is reasonable for the agency to look for more accuracy, which it achieves in some measure through monthly averaging, and also for the agency to look for the full measure of duties resulting therefrom, which it better achieves through zeroing."(Emphasis added) *Union Steel* at 1108. If this is intended to indicate that "full measure of duties" is achieved by zeroing because it takes into account the potential for masked dumped sales, we do not disagree. However, as shown below, masked dumped sales is also a problem in investigations so that there is no difference in the two phases. On the other hand, if *Union Steel* implies that zeroing somehow makes the margin calculation more accurate than without zeroing, we disagree. The assessment rate is the weighted average margin - the aggregate of the individual margins determined for each transaction. Where any individual transaction margin was determined to be negative, Commerce substituted zero for

**B. Contrary to *Union Steel* Zeroing Is As Necessary In Investigations As It Is in Reviews As Demonstrated By Congress' Enactment of 19 USC Section 1677f-1(d)(1)(B) and its Concerns Expressed In The Legislative History With Respect To The Average to Average Methodology and the Potential to Mask Dumped Sales. Further, Contrary to *Union Steel,* Zeroing Does Not Reveal Masked Dumping**

*Union Steel* makes fundamental errors when it attempts to justify the continuing use of zeroing in reviews in holding:

> Commerce's decision to use or not use the zeroing methodology reasonably reflects unique goals in differing comparison methodologies. <u>In average-to-average comparisons, as used in investigations, Commerce examines average export prices; zeroing is not necessary because high prices offset low prices within each averaging group.</u> <u>When examining individual export transactions, using the average-to-transaction comparison methodology, prices are not averaged and zeroing reveals masked dumping.</u> This ensures the amount of antidumping duties assessed better reflect the results of each average-to-transaction comparison.8 Commerce's differing interpretation is reasonable because the comparison methodologies compute dumping margins in different ways and are used for different reasons. *Union Steel* at 1109 (Footnote omitted)(Emphasis added)

Thus, *Union Steel* concluded that the contradictory application of zeroing is justified because:

---

the actual margin so that when the individual transaction margins were aggregated, the weighted average margin was inflated. While an inflated weighted average margin may be justified and may not be arbitrary because of the underlying purpose of zeroing and the potential for masked dumped sales, zeroing does not make the assessment rate more accurate than without zeroing.

14

-zeroing is not necessary in the average to average methodology as used in investigations as high prices offset low prices within each averaging group and

-zeroing reveals masked dumping in reviews using the average to transaction methodology.

Both these conclusions are fundamentally flawed.

First, the conclusion that zeroing is "not necessary" with respect to the average to average methodology used in investigations is contradicted by Commerce's historical application of zeroing. As even *Union Steel* recognized, until December 27, 2006, Commerce used zeroing with average to average comparisons in investigations and only changed its practice to comply with a WTO panel determination. *Union Steel* at 1105 citing Antidumping Proceedings: Final Modification, 71 Fed. Reg. 77,722 (Dec. 27, 2006).

Second, and more significantly, the conclusion that zeroing is "not necessary" with respect to the average to average methodology used in investigations is contradicted by 19 USC Section 1677f-1(d)(1)(B), and Congress' expressed concerns with respect to investigations and masked dumping and exhibits a flawed understanding of zeroing and its purpose. Zeroing (denial of offsets) "legitimately combats the problem of masked dumping, wherein certain profitable sales serve to mask sales at less than fair value." *Timken Co. v. United States*, 354 F.3d 1334, 1343(Fed. Cir. 2004). If, *Union Steel* correctly concludes

zeroing is "not necessary" in investigations, than masked dumping while a legitimate concern in reviews, is <u>not</u> be a concern with respect to the average to average methodology as applied in investigations. That, however, is contrary to Congress' understanding:

> - "[i]n part, the reluctance to use an average-to-average methodology has been based upon a concern that such a methodology could conceal "masked dumping". In such situations, the exporter may sell at a dumped price to particular customers or regions, while selling at higher prices to other customers or regions." *Uruguay Round Agreements Act*, H.R. 103-826, Oct. 3, 1994, Statement of Administrative Action, p. 172.

Because of Congress' concerns regarding masked dumping and the average to average methodology in investigations Congress enacted  19 USC Section 1677f-1(d)(1)(B) carving out an "exception" in <u>investigations</u> to the average to average methodology allowing Commerce to use an alternative methodology where masked dumping is found -"..., *if -(i) there is a pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers, regions, or periods of time, and(ii) the administering authority explains why such differences cannot be taken into account using a method*

described in paragraph (1)(A)(i) or (ii)."[2] Therefore, as zeroing "combats masked dumping" and masked dumping is a concern in the average to average methodology as used in investigations as expressed by Congress in the legislative history and enactment of 19 USC Section 1677f-1(d) (1)(B), then zeroing is not, as

---

[2]

TITLE 19—CUSTOMS DUTIES
§ 1677f–1

\*　　　\*　　　\*

(d) Determination of less than fair value
**(1) Investigations**
(A) In general
In an investigation under part II of this subtitle, the administering authority shall determine whether the subject merchandise is being sold in the United States at less than fair value -
(i) by comparing the weighted average of the normal values to the weighted average of the export prices (and constructed export prices) for comparable merchandise, or
(ii) by comparing the normal values of individual transactions to the export prices (or constructed export prices) of individual transactions for comparable merchandise.
**(B) Exception**
*The administering authority may determine whether the subject merchandise is being sold in the United States at less than fair value by comparing the weighted average of the normal values to the export prices (or constructed export prices) of individual transactions for comparable merchandise, if -*
*(i) there is a pattern of export prices (or constructed export prices) for comparable merchandise that differ significantly among purchasers, regions, or periods of time, and*
*(ii) the administering authority explains why such differences cannot be taken into account using a method described in paragraph (1)(A)(i) or (ii).*

*Union Steel* concludes "not necessary" in investigations and is, in fact, as necessary as it as it is in reviews.

Finally, *Union Steel* again exhibits a misunderstanding as to zeroing and its purpose when it erroneously concludes that "[w]hen examining individual export transactions, using the average-to-transaction comparison methodology, prices are not averaged and zeroing reveals masked dumping". To again use our medical analogy, zeroing is the vaccine against potential masked dumping. It is not the diagnosis.

Commerce determines the existence of masked dumping or targeted dumping by conducting a multi-step statistical analysis, otherwise known as the Nails test derived from the decision in *Mid Continental Nail Corp v United States*, 712 F.Supp. 2d 1370, 1377-78(CIT 2010). The first step in this test requires calculating a standard deviation value, product by product, from average prices for each targeted customer and each non-targeted customer. In the second step there is a calculation of the average price gap. *Gold East Paper (Jiangsu) Co, Ltd, et al. v. United States*, 918 F.Supp.2d 1317, 1328-1329 (2013). In contrast, zeroing is a simple process used in determining the weighted average margin. After the transaction margins are calculated, Commerce will zero out any sale having a negative margin, thus, increasing the overall weighted average margin from that if

calculating the actual weighted average margin. Zeroing does **not** reveal masked dumping.

## 10. CONCLUSION

*Union Steel* fails to correctly address the requirement of *Dongbu* and *JTEKT* - "why is it a reasonable interpretation of the statute to zero in administrative reviews, but not in investigations?" As shown, the purpose of zeroing is to combat potential masked dumped sales which is, not withstanding *Union Steel's* conclusion otherwise, necessary in the context of investigations. Therefore, stripped of the erroneous explanations attempting to justify the continued use of zeroing in reviews, *Union Steel* is left with comparisons pointing out differences in the two phases that *JTEKT* held to be insufficient to meet the *Dongbu* and *JTEKT* requirements.

For these reasons, we respectfully request that the Court overrule *Union Steel* and order Commerce to recalculate the final results without zeroing.

Respectfully submitted,

 _/s/ Jack D. Mlawski
Jack D. Mlawski

Galvin & Mlawski
245 Fifth Avenue
Suite 1902

New York, NY 10016
Tel: (212) 679-1500

Counsel for Plaintiff-Appellant JBF RAK LLC

**JOINT APPENDIX**

# JOINT APPENDIX
## TABLE OF CONTENTS

*JBF RAK LLC v. United States*, Slip Op. 14-2, 4 (CIT January 8, 2014)

    Opinion ................................................................................. 1

    Judgment ............................................................................. 17

    Docket entries ..................................................................... 18

*Issues and Decision Memorandum for the Final Results* (Dep't Commerce, Apr 18, 2011) ................................................................................. 26

Order denying Plaintiff-Appellant's Petition For Hearing En Banc (Fed. Cir., May 21, 2014) ................................................................. 35

Slip Op. 14-2

## UNITED STATES COURT OF INTERNATIONAL TRADE

|  |  |
|---|---|
| JBF RAK LLC, | |
| Plaintiff, | |
| v. | Before: Judith M. Barzilay, Senior Judge |
| UNITED STATES, | Court No. 11-00141 |
| Defendant, | **Public Version** |
| and | |
| MITSUBISHI POLYESTER FILM, INC. and SKC, INC., | |
| Defendant-Intervenors. | |

### **OPINION**

[Commerce's final results are sustained.]

January 8, 2014

*Jack D. Mlawski*, Galvin & Mlawski, for Plaintiff.

*Stuart F. Delery*, Assistant Attorney General; *Jeanne E. Davidson*, Director; *Patricia M. McCarthy*, Assistant Director. (*Stephen C. Tosini*). Senior Trial Counsel, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of counsel. *George H. Kivork*, Attorney, Office of the Chief Counsel for Import Administration, U.S. Department of Commerce, for Defendant.

*Ronald I. Meltzer, Patrick J. McLain, David M. Horn*, and *Jeffrey I. Kessler*, Wilmer Cutler Pickering Hale and Dorr LLP, for Defendant-Intervenors.

BARZILAY, Senior Judge: Before the court is Plaintiff JBF RAK LLC's ("JBF RAK")

motion for judgment on the agency record under USCIT Rule 56.2, challenging Defendant U.S.

Department of Commerce's ("Commerce") final results of the first administrative review

1

Court No. 11-00141

covering polyethylene terephthalate film ("PET Film") from the United Arab Emirates. *See Polyethylene Terephthalate Film, Sheet, and Strip From the United Arab Emirates*, 76 Fed. Reg. 22,867 (Dep't Commerce Apr. 25, 2011) (final results) (*"Final Results"*); *Issues and Decision Memorandum for Polyethylene Terephthalate Film, Sheet, and Strip from the United Arab Emirates*, A-520-803 (Apr. 18, 2011) (*"Issues and Decision Memorandum"*), *available at* http://enforcement.trade.gov/frn/summary/UAE/2011-9967-1.pdf (last visited Jan. 2, 2014). Specifically, JBF RAK challenges (1) Commerce's use of zeroing in its antidumping duty calculation; (2) Commerce's 15-Day Rule for issuing liquidation instructions; and (3) Commerce's home market sales determination. This case was stayed pending resolution of the zeroing issue presented in *Union Steel v. United States*, 713 F.3d 1101 (Fed. Cir. 2013) (*"Union Steel"*). Although the Federal Circuit concluded that Commerce's zeroing practice is lawful, JBF RAK continues to challenge Commerce's use of zeroing. The court has jurisdiction pursuant to 28 U.S.C. § 1581(c). For the reasons set forth below, the court sustains Commerce's *Final Results*.

## I. STANDARD OF REVIEW

When reviewing Commerce's antidumping determinations under 19 U.S.C. § 1516a(a)(2)(B)(iii) and 28 U.S.C. § 1581(c), the U.S. Court of International Trade sustains Commerce's determinations, findings, or conclusions unless they are "unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B)(i). More specifically, when reviewing agency determinations, findings, or conclusions for substantial evidence, the court assesses whether the agency action is "reasonable and supported by the record as a whole." *Nippon Steel Corp. v. United States*, 458 F.3d 1345, 1352 (Fed. Cir. 2006) (internal quotations and citation omitted). Substantial evidence has been described as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

2

Court No. 11-00141

*DuPont Teijin Films USA v. United States*, 407 F.3d 1211, 1215 (Fed. Cir. 2005) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). Substantial evidence has also been described as "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence." *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966).

Separately, the two-step framework provided in *Chevron, U.S.A., Inc. v. Natural Res. Def. Council, Inc.*, 467 U.S. 837, 842-45 (1984), governs judicial review of Commerce's interpretation of the antidumping statute. *See United States v. Eurodif S.A.*, 555 U.S. 305, 316 (2009) (Commerce's "interpretation governs in the absence of unambiguous statutory language to the contrary or unreasonable resolution of language that is ambiguous.").

## II. BACKGROUND

JBF RAK is a manufacturer and exporter of PET Film from the United Arab Emirates. JBF RAK and other interested parties requested that Commerce conduct an administrative review of the antidumping duty order on PET Film. On December 23, 2009, Commerce initiated an administrative review of the antidumping duty order on PET Film from the United Arab Emirates for the period of November 6, 2008, through October 31, 2009. *See Initiation of Antidumping and Countervailing Duty Administrative Reviews and Request for Revocation in Part*, 74 Fed. Reg. 68,229 (Dep't Commerce Dec. 23, 2009). Commerce published its preliminary results and assigned JBF RAK a preliminary weighted average dumping margin of 4.76% *ad valorem*. *See Polyethylene Terephthalate Film, Sheet, and Strip From the United Arab Emirates*, 75 Fed. Reg. 78,968 (Dep't Commerce Dec. 17, 2010) (preliminary results). In the *Final Results*, Commerce revised the preliminary rate and assigned JBF RAK a weighted average dumping margin of 4.88% *ad valorem*. *See Final Results*, 76 Fed. Reg. 22,867.

3

### III. DISCUSSION

*A. Zeroing*

JBF RAK maintains that Commerce's use of zeroing in this case is unlawful. JBF RAK advances the same argument raised in *Union Steel, JTEKT Corp. v. United States*, 642 F.3d 1378 (Fed. Cir. 2011) ("*JTEKT*"), and *Dongbu Steel Co., Ltd. v. United States*, 635 F.3d 1363 (Fed. Cir. 2011) ("*Dongbu*"), which questions whether Commerce may interpret 19 U.S.C. § 1677(35) one way in the context of an administrative review and another way in the context of an antidumping investigation. Pl. Br. 7. Even though *Union Steel* resolved this question, JBF RAK argues for the first time in its reply brief that the Federal Circuit's decision in *Union Steel* is contrary to its prior decisions in *JTEKT* and *Dongbu*. Pl. Reply Br. 4-5. JBF RAK has also indicated that it plans to appeal an adverse decision in this case and request *en banc* review on the issue of zeroing. *See* Pl. Mot. For Test Case Designation, Docket Entry No. 69 (Aug. 14, 2013).

*Union Steel* has resolved the zeroing issue presented here. In *Union Steel*, the Federal Circuit concluded that Commerce's explanation for interpreting § 1677(35) differently in administrative reviews versus investigations constitutes a reasonable interpretation of the statute under the second step of *Chevron*. *See Union Steel*, 713 F.3d at 1110. This case involves the very same issue. Pl. Br. 7.[1] Given that *Union Steel* is binding authority, the court must sustain Commerce's zeroing methodology in this case as a permissible interpretation of the statute. *See id.* at 1110.

---

[1] The court will not consider JBF RAK's new argument challenging the Federal Circuit's decision in *Union Steel*.

Court No. 11-00141

*B. 15-Day Liquidation Policy*

JBF RAK also challenges Commerce's 15-day liquidation policy. It makes the following

argument:

> In Count five of JBF's Complaint, JBF states that [Commerce's] policy of issuing
> liquidation instructions fifteen days after the final results of administrative
> reviews . . . is unlawful and contrary to this court's decision in *SKF USA Inc. v.
> United States*, Slip Op. 10-57 (CIT May 17, 2010) . . . . See JBF Complaint 36-37.
> Most recently, this court awarded declaratory judgment finding Commerce's
> statement in the Final Results declaring its intention to issue liquidation
> instructions 15 days after publication of the final results is unlawful. *SKF USA
> Inc. v. United States*, Slip Op. 11-121 (CIT Oct. 4, 2011) ("*SKF VI*"). As in *SKF
> VI*, the Final Results here also stated Commerce's intention to issue assessment
> instructions 15 days after publication of the Final Results, necessitating Plaintiff's
> submission of, and the Courts [sic] issuing a Temporary Restraining Order before
> the expiration of the 15 day period. Thus, Plaintiff requests a declaratory
> judgment finding Commerce's 15 day rule is unlawful. However, Plaintiff also
> seeks costs as it has no confidence that Commerce will change its practice
> notwithstanding the declaratory judgment. Indeed, this court has held that
> Commerce ignored this court's decisions in analogous circumstances where it
> found Commerce's 15 day rule is unlawful. . . .

Pl. Br. 18.

Defendant, however, claims that JBF RAK failed to raise this issue in the administrative

proceeding before Commerce and therefore failed to exhaust its administrative remedies. Def.

Br. 18. Defendant also argues (if the exhaustion requirement is waived) that Commerce's 15-day

policy constitutes a reasonable interpretation of the statute. Def. Br. 19 (citing *Mittal Steel Galati

S.A. v. United States*, 31 CIT 1121, 502 F. Supp. 2d 1295 (2007)). JBF RAK, though, contends

that it would have been futile to raise the issue below given that Commerce continues to apply its

15-day policy despite the *SKF* decisions declaring it unlawful. Pl. Reply Br. 9-10.

There is no dispute that JBF RAK failed to raise this issue before Commerce. JBF RAK

amended its complaint to add this claim challenging Commerce's 15-day liquidation instruction

policy. The Federal Circuit has explained that

section 2637(d) "indicates a congressional intent that, absent a strong contrary reason, the [trade] court should insist that parties exhaust their remedies before the pertinent administrative agencies." *Corus Staal BV v. United States*, 502 F.3d 1370, 1379 (Fed.Cir.2007). The requirement that invocation of exhaustion be "appropriate," however, requires that it serve some practical purpose when applied. Inquiry into the purposes served by requiring exhaustion in the particular case, and any harms caused by requiring such exhaustion, is needed to determine appropriateness.

Requiring exhaustion can protect administrative agency authority and promote judicial efficiency. *McCarthy v. Madigan*, 503 U.S. 140, 145, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). The requirement can protect an agency's interest in being the initial decisionmaker in implementing the statutes defining its tasks. *Id.* And it can serve judicial efficiency by promoting development of an agency record that is adequate for later court review and by giving an agency a full opportunity to correct errors and thereby narrow or even eliminate disputes needing judicial resolution. *Id.* at 145–46, 112 S.Ct. 1081. At the same time, "the interest of the individual in retaining prompt access to a federal judicial forum" is taken into account in deciding when exhaustion is demanded in order to protect "institutional interests." *Id.* at 146, 112 S.Ct. 1081.

Courts have recognized several recurring circumstances in which institutional interests are not sufficiently weighty or application of the doctrine would otherwise be unjust. For example, a party often is permitted to bypass an available avenue of administrative challenge if pursuing that route would clearly be futile, *i.e.*, where it is clear that additional filings with the agency would be ineffectual." *Id.* (citing *Corus Staal*, 502 F.3d at 1378–79 (futility applies in situations where plaintiffs "would be 'required to go through obviously useless motions in order to preserve their rights'")). Requiring exhaustion may also be inappropriate where the issue for the court is a "pure question of law" that can be addressed without further factual development or further agency exercise of discretion. *See Agro Dutch*, 508 F.3d at 1029. In such circumstances, among others, requiring exhaustion may serve no agency or judicial interest, may cause harm from delay, and may therefore be inappropriate.

*Itochu Bldg. Prods. v. United States*, 2013 WL 4405863 at *4 (Fed. Cir. Aug. 19, 2013).

The court is not convinced that the futility exception applies here. Commerce has exercised its gap-filling, policy-making discretion through its practice of issuing liquidation instructions 15-days after publication of the final results. JBF RAK's failure to challenge the 15-day policy before Commerce has left the court with no record to review on the issue. Missing from the administrative record are Commerce's considered views on its policy, the statute, or applicable case law. The court does not have Commerce's response to JBF RAK's arguments

(which were never made). Therefore, the court needs Commerce's explanation of its policy to properly review this legal issue. As a general matter, it is preferable (even if not always technically required) to have the agency's views established on the administrative record, a principle equally applicable to legal interpretations as well as factual findings. 2 Richard J. Pierce, Jr., ADMINISTRATIVE LAW TREATISE § 14.3 (5th ed. 2010).

Requiring exhaustion in this instance will also protect "administrative agency authority" and "promote judicial efficiency." *Itochu Bldg. Prods.*, 2013 WL 4405863 at *4. For example, the court would encroach on administrative agency authority by evaluating Commerce's 15-day policy (a policy that involves a number of competing factors associated with the administration of the dumping statute) without first receiving its views on this issue. The court, therefore, would have to remand this issue to receive Commerce's views on the record before considering JBF RAK's claim. This inefficiency was caused by JBF RAK's failure to raise the issue before Commerce.

Moreover, it appears that JBF RAK is proceeding from a faulty premise that the *SKF* decisions render Commerce's 15-day policy unlawful as a matter of law. Pl. Br. 18. This is incorrect. Although the *SKF* decisions represent persuasive authority (*i.e.*, declaring Commerce's 15-day policy unlawful as applied to that particular plaintiff), there are other decisions by the Court of International Trade that have sustained Commerce's 15-day policy as a reasonable interpretation of the statute. *See Mittal Steel Galati S.A.*, 502 F. Supp. 2d 1295; *Mittal Steel Galati S.A. v. United States*, 31 CIT 730, 491 F. Supp. 2d 1273 (2007); *Mukand Int. Ltd. v. United States*, 30 CIT 1309, 452 F. Supp. 2d 1329 (2006). There is no binding decision declaring Commerce's policy unlawful.

JBF RAK, for its part, does not even mention the other decisions as contrary authority. Instead, JBF RAK suggests that Commerce's 15-day policy is unlawful as a matter of law

Court No. 11-00141

without much discussion of the statutory scheme, contrary authority, or policy considerations associated with this issue. It is only in its reply brief that JBF RAK begins to discuss the legal framework of the 15-day rule. Pl. Reply Br. 10-11. Ultimately, JBF RAK's claim cannot be reviewed in its current form. Requiring exhaustion is appropriate here, not futile, because the court must have Commerce's views on its policy to properly consider the issue.

### C. Home Market Sales

#### 1. Ordinary Course of Trade

JBF RAK claims that Commerce miscalculated normal value by using certain home market sales made outside the ordinary course of trade. In its administrative case brief, JBF RAK argued that [[      ]] specific home market sales should be excluded from the calculation of normal value because they involved sales with aberrational prices and quantities. *See* Def. Ex. 6 (JBF RAK's Admin. Case Br. 4-10). More specifically, JBF RAK argued that these specific sales involved: (1) extremely small quantities, (2) abnormally high sales price, (3) an abnormal customer, and (4) abnormally high profit margins. *Id.*

In the *Final Results*, Commerce considered and rejected JBF RAK's arguments:

> The Department finds nothing striking about the sales in question that would justify their exclusion. While the quantities in the four sales are below average, they are part of a smooth distribution of quantities from low to high. These sales are among several sales that involved similarly small amounts. Accordingly, the Department does not find that the quantity involved in these four sales was aberrational compared to other sales made by JBF. The quantities involved in these sales are not extraordinary, but fall within the ordinary course of trade in the home market. Additionally, we find there were too few transactions of the CONNUM actually selected for matching to analyze accurately whether the sales prices were aberrational. Profit for these sales was higher than average and higher than for all other sales; however, as with quantity, profit is smoothly distributed from low to high providing no indication of a standard or normal profit rate or even range of rates. While prices and profit are higher than the other home market sales reported, and quantities lower, the variations in prices, quantities, and profits reflect JBF's normal business practice of sales and are not "extraordinary" under 19 CFR 351.102(b)(35) or "aberrational" (to use the language of *Thermal Paper*). . . . Importantly, JBF has not given the Department any reason to consider that

Court No. 11-00141

these transactions differ from other sales in any respect, other than quantity, beyond its own pricing decisions and the willingness of the customers for these sales to pay higher prices. In other words, it has not demonstrated there is a reason why one would expect, prices and profits for these sales to be higher, such as the unusual product or sales aspects examined in *Mexican Cement* or *Thermal Paper*. JBF has not shown that these sales involve off-quality merchandise, were produced according to unusual product specifications, were sold pursuant to unusual terms of sale, or were sold to an affiliated party at a non-arm's length price. Accordingly, the Department finds that JBF has not established that these sales are outside the OCT and, therefore, we have not excluded these sales from our analysis.

*Issues and Decision Memorandum* at 3-4.

In this court proceeding, JBF RAK again argues that there are [[    ]] home market sales

that should be excluded from Commerce's calculation of normal value because they were made

outside the ordinary course of trade. Pl. Br. 14. In fact, JBF RAK has actually submitted the

exact same arguments (without any revisions) that it presented to Commerce prior to the *Final*

*Results*. Pl. Br. 14-18.

Under USCIT Rule 56.2, JBF RAK's brief must include "the issues of law presented

together with the reasons for contesting or supporting the administrative determination,

specifying how the determination may be arbitrary, capricious, an abuse of discretion, not

otherwise in accordance with law, unsupported by substantial evidence; or, how the

determination may be unwarranted by the facts to the extent that the agency may or may not

have considered facts which, as a matter of law, should have been properly considered." USCIT

Rule 56.2(c)(1).

Unfortunately, JBF RAK has simply recycled its argument from its administrative case

brief (almost verbatim) without attempting to analyze Commerce's findings and conclusions

against the operative standard of review. *See* Def. Ex. 6 (JBF RAK's Admin. Case Br. 4-10); Pl.

Br. 14-18. For a fact-intensive ordinary course of trade issue, Commerce is the finder of fact,

weighing the available record information and evaluating each of the relevant factors. *See*

Court No. 11-00141

*Cemex, S.A. v. United States*, 133 F.3d 897, 900 (Fed. Cir. 1998) ("*Cemex*"). The court, in turn, does not consider the problem *de novo*, or re-weigh the evidence anew, but instead reviews whether Commerce's determination is supported by substantial evidence, 19 U.S.C. § 1516a(b)(1)(B)(i), or more simply, whether Commerce reasonably concluded that the subject sales were made in the ordinary course of trade. *See Thai I-Mei Frozen Foods Co., Ltd. v. United States*, 616 F.3d 1300, 1307 (Fed. Cir. 2010) ("[T]he only question is whether Commerce reasonably concluded that it was appropriate to exclude sales outside the ordinary course of trade, given the available data and circumstances of this investigation.").

JBF RAK never mentions the operative standard of review. Pl. Br. 14-18. It never addresses Commerce's findings and conclusions in the *Issues and Decision Memorandum*. It just repeats the same arguments made prior to the *Final Results* without any consideration of Commerce's response and rejection of those very same arguments in the *Final Results*. Pl. Br. 14-18. For example, Commerce explained that JBF RAK failed to address whether the subject sales "involve off-quality merchandise, were produced according to unusual product specifications, were sold pursuant to unusual terms of sale, or were sold to an affiliated party at a non-arm's length price." *Issues and Decision Memorandum* at 3-4. JBF RAK does not discuss these factors that must also be considered (in addition to price and quantity) in determining whether sales fall outside the ordinary course of trade. *See Cemex*, 133 F.3d at 900 ("Commerce must evaluate not just one factor taken in isolation but rather . . . all the circumstances particular to the sales in question.") (internal quotations and citation omitted).

By failing to frame its arguments against the operative standard of review, *see* USCIT Rule 56.2(c)(1), JBF RAK has created an obvious problem for the court and the other litigants. If it were to review the issue in this context, the court would first have to assume the role of co-plaintiff, reframe Plaintiff's arguments under the substantial evidence standard of review (rather

Court No. 11-00141

than the *de novo* standard before the agency), and analyze Commerce's ordinary course of trade findings under that framework. In reviewing whether Commerce reasonably concluded that the subject sales were made in the ordinary course of trade, the court would also have to evaluate factors ignored by JBF RAK (*i.e.*, whether sales involve off-quality merchandise, unusual product specifications, unusual terms of sale, and affiliated party transactions). The court would in essence be litigating the issue for Plaintiff, something the court cannot do. *See United States v. Great Am. Ins. Co.*, 2013 WL 6820678, at *6 (Fed. Cir. 2013) ("It is well established that arguments that are not appropriately developed in a party's briefing may be deemed waived."); *MTZ Polyfilms, Ltd. v. United States*, 33 CIT 1575, 1578, 659 F. Supp. 2d 1303, 1308 (2009) ("[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not enough merely to mention a possible argument in the most skeletal way, leaving the court to do counsel's work, create the ossature for the argument, and put flesh on its bones.") (quoting *United States v. Zannino*, 895 F.2d 1, 17 (1st Cir. 1990)). Accordingly, the court deems the issue waived.

### 2. Model Matching

JBF RAK also challenges Commerce's model-matching methodology for identifying the foreign like product. Pl. Br. 10. Goods imported into the United States will be subject to antidumping duties if Commerce determines that foreign merchandise is being sold in the United States at less than its fair value. *See* 19 U.S.C. § 1673. The amount of the antidumping duty reflects the amount by which the home-market price of the foreign like product (*i.e,* normal value) exceeds the price charged in the United States. *See* 19 U.S.C. § 1677b(a)(1)(A)-(B). The difference is referred to as the dumping margin. 19 U.S.C. § 1677(35)(A). To "establish the dumping margin, whether in an initial investigation or in an administrative review, Commerce must first identify the 'foreign like product' which will form the basis for comparison to

Court No. 11-00141

merchandise exported to the United States." *Fagersta Stainless AB v. United States*, 32 CIT 889, 889, 577 F. Supp. 2d 1270, 1275 (2008) ("*Fagersta*") (citing *Pesquera Mares Australes Ltda. v. United States*, 266 F.3d 1372, 1375 (Fed. Cir. 2001) ("*Pesquera*"). The "process by which Commerce identifies the 'foreign like product' in determining dumping margins . . . is called 'model-matching.'" *Koyo Seiko Co. v. United States*, 551 F.3d 1286, 1289 (Fed. Cir. 2008). Commerce first attempts to match sales of dumped merchandise with sales of identical merchandise in the comparison market. 19 U.S.C. § 1677(16)(A). Where there is no identical merchandise, as is the case here, Commerce attempts to match sales in the United States with sales of a similar product in the comparison market. § 1677(16)(B)-(C).

Congress has not precisely defined the methodology by which Commerce must identify the foreign like product. It has implicitly delegated that gap-filling authority to Commerce. *Pesquera*, 266 F.3d at 1384. Commerce, in turn, has considerable discretion to construct a methodology for identifying the foreign like product in antidumping proceedings. *SKF USA, Inc. v. United States*, 537 F.3d 1373, 1379 (Fed. Cir. 2008). Commerce has established a model-matching methodology that applies a hierarchy of commercially significant characteristics to identify a suitable foreign like product. Once Commerce has established such a hierarchy, it will not modify that methodology unless presented with "compelling reasons" to change it. *Fagersta*, 577 F. Supp. 2d at 1276. It is "not necessary to ensure that home market models are technically substitutable, purchased by the same type of customers, or applied to the same end use as the U.S. model." *Koyo Seiko Co., Ltd. v. United States*, 66 F.3d 1204, 1210 (Fed. Cir. 1995).

In the *Final Results*, Commerce rejected JBF RAK's proposed changes to its model-matching methodology:

> We have not made JBF's suggested changes to the matching methodology. The model-matching hierarchy used in the *Preliminary Results* consists of four criteria (in order of importance): specification, thickness in microns, thickness code, and

12

surface treatment. The model matching methodology used for these final results is the same as that used for the *Preliminary Results*, which is the same as that used in the investigation (excepting one minor difference, not relevant to this issue). When the Department has an established model-matching methodology in a proceeding, it may alter its established methodology if there is a reasonable basis for doing so. *See NTN Bearing Corp. of America v. United States*, 295 F.3d 1263, 1269 (CAFC 2002). With respect to changes to its model-matching methodology, the Department has applied a "compelling reasons" standard. *Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom: Final Results of Antidumping Duty Administrative Reviews*, 70 FR 54711 (September 16, 2005) and accompanying Issues and Decision Memorandum (DM) at Comment 2, and *Antifriction Bearings (Other Than Tailored Roller Bearings) and Parts Thereof From France; et al.: Final Results of Antidumping Duty Administrative Reviews*, 57 FR 28360 (June 24,1992) at General Issues, Comment 1. Compelling reasons that warrant a change to the model-matching methodology may include, for example, greater accuracy in comparing foreign like product to the single most similar U.S. model, in accordance with section 771(16)(B) of the Tariff Act of 1930, as amended (the Act), or a greater number of reasonable price-to-price comparisons in accordance with section 773(a)(1) of the Act. *See ex., Stainless Steel Wire Rod from Sweden: Final Results of Antidumping Duty Administrative Review*, 72 FR 17834 (April 10, 2007) and accompanying IDM at Comment 2.

JBF has not provided compelling reasons for the Department to consider changing the model-match methodology from the methodology used in the *Preliminary Results* and the investigation. Under the Department's model matching hierarchy, we select a similar model for matching purposes according to: the list of characteristics, the order of the characteristics, and the ranking of choices under each characteristic. With respect to PET Film, the Department determined that four physical characteristics are needed to properly define the product: specification, micron, thickness code and surface treatment. Surface treatment, as the last listed characteristic, is the least consequential. Accordingly, only when all other characteristics are equal will U.S. products be matched to home market products with different surface treatments. As Petitioners note, the slate of other suggested matches offered by JBF for other U.S. products are unacceptable matches for a number of reasons outside of physical characteristics, including the contemporaneousness of sales and cost of production. Specifically, all suggested alternatives by JBF were either not sold within the matching window for the U.S. sales or were sold below cost. Also, its case brief is the first instance that JBF suggested a change in methodology, precluding the Department from the opportunity to collect additional necessary information to evaluate JBF's claims. Without such additional information, the Department has no basis to evaluate such arguments, beyond JBF's reference to one sentence in the cost verification report that mentions the apparent lack of materials or process involved in applying a corona surface to film.

*Issues and Decision Memorandum* at 5-6.

JBF RAK claims that Commerce's "match is materially different than the U.S. article while Plaintiff's match is materially the same and has the identical Cost of Production as the U.S. sales article." Pl. Br. 10. Specifically, JBF RAK claims that Commerce should use a coated film rather than an uncoated film as a match for the U.S. product. Pl. Br. 11. JBF RAK claims that its proposed match (which is acrylic coated on one side and corona[2] treated on the other) is a better match than Commerce's match (which is plain on one side and corona treated on the other). Pl. Br. 11. JBF RAK claims that its suggested match "is the like product match contemplated by the statute and fulfills Commerce's stated goal of '. . . greater accuracy in comparing foreign like product to the single most similar U.S. model.'" Pl. Br. 10.

Contrary to JBF RAK's claim, there is no compelling reason for Commerce to change its methodology. Commerce applied the following hierarchy (consistently from the preliminary through the final determination) to identify the foreign like product: (1) specification, (2) thickness in microns, (3) thickness code, and (4) surface treatment. *See Issues and Decision Memorandum* at 5; *Preliminary Analysis Memorandum for JBF RAK LLC*, A-520-803, at 3 (Dec. 7, 2010). Commerce, therefore, ranked "surface treatment" as the least important criterion to determine whether the home market product was similar to the U.S. product for purposes of matching. *See Issues and Decision Memorandum* at 5. The U.S. product (*i.e.*, PET Film) is acrylic coated on one side with no treatment on the other side (acrylic coated, plain). Commerce's model-match from the home market is uncoated on one side with corona treatment on the other side (plain, corona treated). Commerce concluded that the differences in surface treatments were inconsequential under its hierarchy. Although not stated explicitly in the *Final Results*, there is no dispute that the other higher ranked characteristics (*i.e.*, specification,

---

[2] Corona is an electric charge applied to film that makes it more suitable for certain applications. *Issues and Decision Memorandum* at 4.

Court No. 11-00141

thickness in microns, thickness code) are the same between Commerce's proposed match and the

U.S. product. *See Issues and Decision Memorandum* at 5 ("Accordingly, only when all other

characteristics are equal will U.S. products be matched to home market products with different

surface treatments."); Pl. Br. 11 ("All other characteristics of the U.S. sale product, Plaintiff's

match, and [Commerce's] match are the same."). Given that these other characteristics rank

higher than "surface treatment," Commerce's selection of the foreign like product in this case is

consistent with its hierarchy.

JBF RAK, however, proposes an alternative match with different surface treatments. JBF

RAK's proposed match is acrylic coated on one side with corona treatment on the other side

(acrylic coated, corona treated). It argues that the corona treatment is insignificant because it

does not add any material to the PET Film and merely provides a static electric charge. The other

characteristics are also the same between JBF RAK's proposed match and the U.S. product. JBF

RAK, therefore, contends that its proposed match is a better choice than Commerce's match

because it has surface characteristics that more closely resemble the U.S. product.

Even if JBF RAK's proposed model-match is a better fit based on the differences in

surface treatment (which would not render Commerce's choice unreasonable), there are other

issues associated with JBF RAK's proposed model-match that make it unsuitable to serve as the

foreign like product. Specifically, JBF RAK's proposed matches (sales) were sold either outside

the matching window (*i.e.*, not contemporaneous) or below the cost of production. *See Issues and*

*Decision Memorandum* at 6.

Under 19 U.S.C. § 1677f-1(d)(2), "when comparing export prices . . . of individual

transactions to the weighted average price of sales of the foreign like product, the administering

authority shall limit its averaging of prices to a period not exceeding the calendar month that

Court No. 11-00141

corresponds most closely to the calendar month of the individual export sale."). Commerce has promulgated a regulation implementing the contemporaneity requirement:

> Normally, [Commerce] will select as the contemporaneous month the first of the following which applies: (1) The month during which the particular U.S. sale under consideration was made; (2) If there are no sales of the foreign like product during this month, the most recent of the three months prior to the month of the U.S. sale in which there was a sale of the foreign like product; (3) If there are no sales of the foreign like product during any of these months, the earlier of the two months following the month of the U.S. sale in which there was a sale of the foreign like product.

19 C.F.R. § 351.414(f). This is known at the "90/60 window." *See, e.g., AIMCOR v. United States*, 23 CIT 1000, 1006, 86 F. Supp. 2d 1248, 1255 n.4 (1999). Alternatively, under 19 U.S.C. § 1677b(b)(1), "[i]f the administering authority determines that sales made at less than the cost of production . . . such sales may be disregarded in the determination of normal value."

As Commerce observed, JBF RAK's proposed model-match involves sales that fall outside the "90/60 window" or sales "made at less than the cost of production." JBF RAK does not discuss this issue in its papers and focuses exclusively on the differing surface treatments. The court, therefore, must assume that JBF RAK does not contest Commerce's findings and conclusions on the question of contemporaneity and sales made below the cost of production. Accordingly, Commerce reasonably rejected JBF RAK's suggested changes to its methodology. Commerce's model-matching methodology for identifying a suitable foreign like product was reasonable in this case.

## IV. CONCLUSION

For the foregoing reasons, Commerce's *Final Results* are sustained. Judgment will be entered accordingly.

Dated: __January 8, 2014__            __/s/ Judith M. Barzilay__
       New York, New York           Judith M. Barzilay, Senior Judge

UNITED STATES COURT OF INTERNATIONAL TRADE

JBF RAK LLC,

        Plaintiff,

    v.

UNITED STATES,

        Defendant,

  and

MITSUBISHI POLYESTER FILM, INC.
and SKC, INC.,

        Defendant-Intervenors.

Before: Judith M. Barzilay, Senior Judge

Court No. 11-00141

## JUDGMENT

Upon consideration of Plaintiff's motion for judgment on the agency record, Defendant's

response in opposition, and all other papers in this action, and upon due deliberation, it is hereby

**ORDERED** that Commerce's *Final Results* are sustained.

Dated: <u>January 8, 2014</u>
     New York, NY

          <u>/s/ Judith M. Barzilay</u>
          Judith M. Barzilay, Senior Judge

APPEAL.TERMINATED

**U.S. Court of International Trade**
**LIVE Database (New York)**
**CIT DOCKET FOR CASE #: 1:11-cv-00141-JMB**

JBF RAK LLC v. United States
**Assigned to:** Judith M. Barzilay
**Lead Docket:**

**Jurisdiction:**
28USC § 1581(c) Antidumping or Countervailing Duty Determination(s)

**Date Filed:** 05/10/2011
**Jury Demand:** No

**Category:**
Determination not to Initiate Investigation 19USC § 1516a(a)(1)(A)

**Date Terminated:** 01/08/2014

**Date Reopened:**

**Agency:**
U.S. Department of Commerce

**Does this action raise an issue of constitutionality?:** N

**Product Description:**
Polyethylene Terephthalate Film, Sheet, and Strip

**Export Country:**
United Arab Emirates

**Plaintiff**

**JBF RAK LLC**

represented by **Jack David Mlawski**
Galvin & Mlawski
245 Fifth Avenue
Suite 1902 . New York NY
10016
USA
(212) 679-1500 (fax)
Fax: (212) 971-0417
Email: jm@customslaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
***ATTORNEY IN SEALED GROUP***
*Bar Status: ACTIVE*

**John Joseph Galvin**
Galvin & Mlawski
245 Fifth Avenue
Suite 1902 . New York NY
10016
USA
(212) 679-1500 (fax)
Fax: (212) 971-0417
Email: jjgalvin@hotmail.com *(Inactive)*
*ATTORNEY TO BE NOTICED*
*Bar Status: ACTIVE*

**Defendant**

**United States**

represented by **Stephen Carl Tosini**
U.S. Department of Justice
Commercial Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station, Washington DC
20044
USA
(202) 616-5196 (fax)
Fax: (202) 657-2417

U.S. Court of International Trade (LIVE Database)    https://ecf.cit.uscourts.gov/cgi-bin/DktRpt1298974533896504-L_1_0-1

Email: stephen.tosini@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**ATTORNEY IN SEALED GROUP**
*Bar Status: ACTIVE*

**Devin Scott Sikes**
Of Counsel
U.S. Department of Commerce
Office of Chief Counsel for Import Administration
1401 Constitution Avenue, NW.
Room 3627, Washington DC
20230-0001
USA
(202) 482-4044 (fax)
Fax: (202) 482-4912
Email: devin.sikes@trade.gov
*ATTORNEY TO BE NOTICED*
**ATTORNEY IN SEALED GROUP**
*Bar Status: ACTIVE*

**George Hratch Kivork**
Of Counsel
U.S. Department of Commerce
Office of Chief Counsel for Import Administration
1401 Constitution Avenue, NW
Room 3628, Washington DC
20230-0001
USA
(202) 482-1353 (fax)
Fax: (202) 482-4912
Email: george.kivork@trade.gov
*TERMINATED: 01/23/2014*
*Bar Status: ACTIVE*

**Melissa Marion Devine**
U.S. Department of Justice
Commerical Litigation Branch - Civil Division
P.O. Box 480
Ben Franklin Station, Washington DC
20044
USA
(202) 616-0341 (fax)
Fax: (202) 514-7965
Email: melissa.m.devine@usdoj.gov
*ATTORNEY TO BE NOTICED*
**ATTORNEY IN SEALED GROUP**
*Bar Status: ACTIVE*

**Intervenor Defendant**
**DuPont Teijin Films**                                  represented by **David Moses Horn**
Wilmer, Cutler, Pickering, Hale & Dorr, LLP
1875 Pennsylvania Avenue, NW., Washington DC
20006-3642
USA
(202) 663-6749 (fax)
Fax: (202) 663-6363
Email: david.horn@wilmerhale.com
*TERMINATED: 10/24/2012*
*Bar Status: ACTIVE*

**Jeffrey Ian Kessler**
Wilmer, Cutler, Pickering, Hale & Dorr, LLP
1875 Pennsylvania Avenue, NW., Washington DC
20006-3642
USA
(202) 663-6212 (fax)

U.S. Court of International Trade / CM/ECF Database

Fax: (202) 663-6363
Email: jeffrey.kessler@wilmerhale.com
*TERMINATED: 10/24/2012*
**Bar Status: ACTIVE**

**Patrick James McLain**
Wilmer, Cutler, Pickering, Hale & Dorr, LLP
1875 Pennsylvania Avenue, NW. , Washington DC
20006-3642
USA
(202) 663-6393 (fax)
Fax: (202) 663-6363
Email: patrick.mclain@wilmerhale.com
*TERMINATED: 10/24/2012*
**Bar Status: ACTIVE**

**Ronald Ira Meltzer**
Wilmer, Cutler, Pickering, Hale & Dorr, LLP
1875 Pennsylvania Avenue, NW. , Washington DC
20006-3642
USA
(202) 663-6389 (fax)
Fax: (202) 663-6363
Email: ronald.meltzer@wilmerhale.com
*TERMINATED: 10/24/2012*
**Bar Status: ACTIVE**

**Intervenor Defendant**
**Mitsubishi Polyester Film, Inc.**

represented by **David Moses Horn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**ATTORNEY IN SEALED GROUP**
**Bar Status: ACTIVE**

**Jeffrey Ian Kessler**
(See above for address)
*ATTORNEY TO BE NOTICED*
**Bar Status: ACTIVE**

**Patrick James McLain**
(See above for address)
*ATTORNEY TO BE NOTICED*
**Bar Status: ACTIVE**

**Ronald Ira Meltzer**
(See above for address)
*ATTORNEY TO BE NOTICED*
**Bar Status: ACTIVE**

**Intervenor Defendant**
**SKC, Inc.**

represented by **David Moses Horn**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
**ATTORNEY IN SEALED GROUP**
**Bar Status: ACTIVE**

**Jeffrey Ian Kessler**
(See above for address)
*ATTORNEY TO BE NOTICED*
**Bar Status: ACTIVE**

**Patrick James McLain**
(See above for address)
*ATTORNEY TO BE NOTICED*
**Bar Status: ACTIVE**

Ronald Ira Meltzer
(See above for address)
*ATTORNEY TO BE NOTICED*
*Bar Status: ACTIVE*

**Intervenor Defendant**
**Toray Plastics (America), Inc.**                     represented by **David Moses Horn**
(See above for address)
*TERMINATED: 09/20/2013*
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*
*Bar Status: ACTIVE*

**Jeffrey Ian Kessler**
(See above for address)
*TERMINATED: 09/20/2013*
*Bar Status: ACTIVE*

**Patrick James McLain**
(See above for address)
*TERMINATED: 09/20/2013*
*Bar Status: ACTIVE*

**Ronald Ira Meltzer**
(See above for address)
*TERMINATED: 09/20/2013*
*Bar Status: ACTIVE*

| Date Filed | # | Docket Text |
|---|---|---|
| 05/10/2011 | 1 | Summons. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of All Plaintiffs. (Attachments: # 1 Certificate of Service) (Mlawski, Jack) (Entered: 05/10/2011) |
| 05/10/2011 | 2 | Form 5 Information Statement. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of All Plaintiffs. (Mlawski, Jack) (Entered: 05/10/2011) |
| 05/10/2011 | 3 | Form 13 Corporate Disclosure Statement. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC. (Mlawski, Jack) (Entered: 05/10/2011) |
| 05/10/2011 | 4 | Form 17 Business Proprietary Information Certification filed on behalf of John D. Mlawski. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC. (Mlawski, Jack) (Entered: 05/10/2011) |
| 05/10/2011 | 5 | Form 17 Business Proprietary Information Certification filed on behalf of John J. Galvin. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC. (Mlawski, Jack) (Entered: 05/10/2011) |
| 05/10/2011 | 6 | Form 11 Notice of Appearance. Filed by Melissa Marion Devine of U.S. Department of Justice on behalf of United States.(Devine, Melissa) (Entered: 05/10/2011) |
| 05/10/2011 | 7 | Application/Motion for temporary restraining order. Responses due by 5/31/2011. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC. (Attachments: # 1 Order, # 2 Brief Memo in support, # 3 Affidavit, # 4 Certificate of Service)(Mlawski, Jack) (Entered: 05/10/2011) |
| 05/11/2011 | 8 | Response *in Opposition* to motion *for Temporary Restraining Order* (related document(s) 7 ). Filed by Melissa Marion Devine of U.S. Department of Justice on behalf of United States.(Devine, Melissa) (Entered: 05/11/2011) |
| 05/11/2011 | 9 | Order entered on 5/11/2011, Granting pltf's motion for temporary restraining order (Related Doc # 7 ). (Taronji, Steve) (Entered: 05/11/2011) |
| 05/11/2011 | 10 | Complaint against United States. Administrative Record due by 6/27/2011. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC. (Attachments: # 1 Certificate of Service pursuant to rule 3(f), # 2 Certificate of Service pursuant to Rule 5)(Mlawski, Jack) (Entered: 05/11/2011) |
| 05/11/2011 | 11 | Summons served by Clerk's Office upon Plaintiff and appropriate Government Agency/Agencies. (Goell, Geoffrey) (Entered: 05/11/2011) |
| 05/12/2011 | 12 | Application/Motion for preliminary injunction. Responses due by 5/31/2011. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC. (Attachments: # 1 Proposed order, # 2 Brief memo in support, # 3 Certificate of Service)(Mlawski, Jack) (Entered: 05/12/2011) |
| 05/13/2011 | 13 | Response *in Opposition* to motion *for Preliminary Injunction* (related document(s) 12 ). Filed by Melissa Marion Devine of U.S. Department of Justice on behalf of United States.(Devine, Melissa) (Entered: 05/13/2011) |
| 05/17/2011 | 14 | Order entered on 5/17/2011, Granting motion for preliminary injunction (Related Doc # 12 ). (Taronji, Steve) (Entered: 05/17/2011) |

| 05/17/2011 | 15 | Certificate of service (related document(s) 14 ). Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC. (Attachments: # 1 Order Preliminary Injunction)(Mlawski, Jack) (Entered: 05/17/2011) |
| 05/18/2011 | 16 | Order entered on 5/18/2011 assigning action to Judge Judith M. Barzilay.(Swindell, Stephen) (Entered: 05/18/2011) |
| 05/23/2011 | 17 | Consent Motion to Intervene as Defendant intervenor. Responses due by 6/13/2011. Filed by David Moses Horn of Wilmer, Cutler, Pickering, Hale & Dorr, LLP on behalf of DuPont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., Toray Plastics (America), Inc..(Horn, David) (Entered: 05/23/2011) |
| 05/23/2011 | 18 | Form 11 Notice of Appearance *on behalf of Ronald I. Meltzer, Patrick J. McLain, and David M. Horn*. Filed by David Moses Horn of Wilmer, Cutler, Pickering, Hale & Dorr, LLP on behalf of DuPont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., Toray Plastics (America), Inc..(Horn, David) (Entered: 05/23/2011) |
| 05/23/2011 | 19 | Form 17 Business Proprietary Information Certification filed on behalf of *David M. Horn, Ronald I. Meltzer, and Patrick J. McLain, as attorneys, and Susan Crawford and Susie Moyer, as consultants*. Filed by David Moses Horn of Wilmer, Cutler, Pickering, Hale & Dorr, LLP on behalf of DuPont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., Toray Plastics (America), Inc.. (Horn, David) (Entered: 05/23/2011) |
| 05/23/2011 | 20 | Form 13 Corporate Disclosure Statement. Filed by David Moses Horn of Wilmer, Cutler, Pickering, Hale & Dorr, LLP on behalf of DuPont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., Toray Plastics (America), Inc.. (Horn, David) (Entered: 05/23/2011) |
| 05/25/2011 | 21 | Order entered on 5/25/2011 granting Motion to intervene (Related Doc # 17 ).. (Swindell, Stephen) (Entered: 05/25/2011) |
| 06/21/2011 | 22 | Confidential and Public Administrative record for Department of Commerce filed *(c/d)*. (Demb, Rebecca) (Entered: 06/27/2011) |
| 06/21/2011 | 23 | Notice of Manual Filing. The document for Docket Entry # 22 has been filed manually.. Filed by George Hratch Kivork of U.S. Department of Commerce on behalf of United States.(Demb, Rebecca) (Entered: 06/27/2011) |
| 07/07/2011 | 24 | Motion to dismiss case *Count Five of plaintiff's Complaint*. Response to Dispositive Motion due by 8/15/2011. Filed by Melissa Marion Devine of U.S. Department of Justice on behalf of United States.(Devine, Melissa) (Entered: 07/07/2011) |
| 07/19/2011 | 25 | Joint status report. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of All Parties. (Mlawski, Jack) (Entered: 07/19/2011) |
| 07/19/2011 | 26 | Proposed scheduling order. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of All Parties. (Mlawski, Jack) (Entered: 07/19/2011) |
| 07/19/2011 | 27 | Order entered on 7/19/2011 Scheduling Order: Dispositive motions, if any, due by 12/21/2011. Response to Dispositive Motion due by 2/21/2012. Replies due by 3/20/2012. Joint, tabbed and paginated Appendix due by 3/30/2012..(Demb, Rebecca) (Entered: 07/19/2011) |
| 08/15/2011 | 28 | Response to motion *to dismiss count five and cross motion to amend complaint* (related document(s) 24 ). Replies due by 9/6/2011. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC.(Mlawski, Jack) (Entered: 08/15/2011) |
| 09/06/2011 | 29 | Reply *in Support of Motion to Dismiss in Part* (related document(s) 28 ). Filed by Melissa Marion Devine of U.S. Department of Justice on behalf of United States.(Devine, Melissa) (Entered: 09/06/2011) |
| 10/12/2011 | 30 | Order entered on 10/12/2011 denying Motion to dismiss case: ORDERED that plaintiff's motion for leave to file an amended complaint is Granted. (Related Doc # 24 ). (Swindell, Stephen) (Entered: 10/12/2011) |
| 10/17/2011 | 31 | Amended complaint against All Defendants. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC.(Mlawski, Jack) (Entered: 10/17/2011) |
| 11/11/2011 | 32 | Motion to stay. Responses due by 11/30/2011. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC.(Mlawski, Jack) (Entered: 11/11/2011) |
| 11/30/2011 | 33 | Response *in opposition* to motion *to stay* (related document(s) 32 ). Filed by Melissa Marion Devine of U.S. Department of Justice on behalf of United States.(Devine, Melissa) (Entered: 11/30/2011) |
| 11/30/2011 | 34 | Consent Motion to Amend Scheduling Order. Responses due by 12/19/2011. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC.(Mlawski, Jack) (Entered: 11/30/2011) |
| 11/30/2011 | 35 | Response *in opposition* to motion *to stay* (related document(s) 32 ). Filed by David Moses Horn of Wilmer, Cutler, Pickering, Hale & Dorr, LLP on behalf of DuPont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., Toray Plastics (America), Inc..(Horn, David) (Entered: 11/30/2011) |
| 12/02/2011 | 36 | Order entered on 12/2/2011 granting Motion to Amend Scheduling Order. ORDERED that if plaintiff's motion to stay in this action is denied, the parties shall within 5 days of the denial of the motion to stay file a proposed amended scheduling order and briefing schedule. (Related Doc # 34 ). (Swindell, Stephen) (Entered: 12/02/2011) |
| 12/05/2011 | 37 | Order entered on 12/5/2011 denying Motion to stay (Related Doc # 32 ). (Swindell, Stephen) (Entered: 12/05/2011) |
| 12/08/2011 | 38 | Answer to Amended Complaint . Filed by Melissa Marion Devine of U.S. Department of Justice on behalf of United States. (Devine, Melissa) (Entered: 12/08/2011) |
| 12/12/2011 | 39 | Joint Motion to Amend Scheduling Order . Responses due by 1/3/2012. Filed by David Moses Horn of Wilmer, Cutler, Pickering, Hale & Dorr, LLP, Patrick James McLain of Wilmer, Cutler, Pickering, Hale & Dorr, LLP, Ronald Ira Meltzer of Wilmer, Cutler, Pickering, Hale & Dorr, LLP, Jack David Mlawski of Galvin & Mlawski, Melissa Marion Devine of U.S. Department of Justice on behalf of All Parties.(Mlawski, Jack) (Entered: 12/12/2011) |

| 12/13/2011 | 40 | Order entered on 12/13/2011 granting Motion to Amend Scheduling Order (Related Doc # 39 ). Dispositive motions, if any, due by 2/24/2012. Response to Dispositive Motion due by 4/24/2012. Replies due by 5/24/2012. Appendix due by 6/4/2012. (Swindell, Stephen) (Entered: 12/13/2011) |
|---|---|---|
| 02/24/2012 | 42 | Confidential Motion for judgment on agency record 56.2 *w confidential memorandum in support*. Response to 56.2 Motion due by 4/24/2012. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of All Plaintiffs.(Swindell, Stephen) (Entered: 02/29/2012) |
| 02/24/2012 | 43 | Notice of Manual Filing. The document for Docket Entry #42 has been filed manually. (related document(s) 42 ). Filed by Jack David Mlawski of Galvin & Mlawski on behalf of All Plaintiffs.(Swindell, Stephen) (Entered: 02/29/2012) |
| 02/27/2012 | 41 | Motion for judgment on agency record 56.2 . Response to 56.2 Motion due by 4/24/2012. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC. (Attachments: # 1 Appendix JBF PUBLIC APPENDIX TO 56.2 MOTION)(Mlawski, Jack) Modified on 2/27/2012 (Love, Cynthia). (Entered: 02/27/2012) |
| 03/29/2012 | 44 | Form 11 Notice of Appearance . Filed by Stephen Carl Tosini of U.S. Department of Justice on behalf of United States.(Tosini, Stephen) (Entered: 03/29/2012) |
| 04/12/2012 | 45 | Consent Motion for extension of time until 5/24/2012 to file response brief . Responses due by 5/1/2012. Filed by Stephen Carl Tosini of U.S. Department of Justice on behalf of United States.(Tosini, Stephen) (Entered: 04/12/2012) |
| 04/13/2012 | 46 | Order entered on 4/13/2012 granting Motion for extension of time to file response brief. Response brief due by 5/24/2012. ORDERED that plaintiff may file a reply no later than 7/30/2012 (Related Doc # 45 ). (Swindell, Stephen) (Entered: 04/13/2012) |
| 05/08/2012 | 47 | Confidential Administrative record for Department of Commerce filed *Missing document from record filed on 6/21/2011, with one amended public CD and one amended confidential CD*. (Demb, Rebecca) Modified on 5/11/2012 (Love, Cynthia). (Entered: 05/11/2012) |
| 05/08/2012 | 48 | Notice of Manual Filing. The document for Docket Entry #47 has been filed manually. . Filed by George Hratch Kivork of U.S. Department of Commerce on behalf of United States.(Demb, Rebecca) (Entered: 05/11/2012) |
| 05/23/2012 | 49 | Consent Motion for extension of time until 6/1/2012 to file response briefs. . Responses due by 6/11/2012. Filed by Jeffrey Ian Kessler of Wilmer, Cutler, Pickering, Hale & Dorr, LLP on behalf of DuPont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., Toray Plastics (America), Inc.. (Attachments: # 1 Proposed Order)(Kessler, Jeffrey) (Additional attachment(s) added on 5/23/2012: # 1 Proposed Order) (Love, Cynthia). (Entered: 05/23/2012) |
| 05/23/2012 | 50 | Form 11 Notice of Appearance . Filed by Jeffrey Ian Kessler of Wilmer, Cutler, Pickering, Hale & Dorr, LLP on behalf of DuPont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., Toray Plastics (America), Inc..(Kessler, Jeffrey) (Entered: 05/23/2012) |
| 05/24/2012 | 51 | Order entered on 5/24/2012 granting Motion for extension of time (Related Doc # 49 ). Defendant and defendant-intervenors Response to Dispositive Motion due by 6/1/2012. Plaintiff's Reply due by 8/7/2012. (Love, Cynthia) (Entered: 05/24/2012) |
| 05/29/2012 | 52 | Form 17 Business Proprietary Information Certification filed on behalf of *Jeffrey Ian Kessler*. Filed by Jeffrey Ian Kessler of Wilmer, Cutler, Pickering, Hale & Dorr, LLP on behalf of DuPont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., Toray Plastics (America), Inc.. (Kessler, Jeffrey) (Entered: 05/29/2012) |
| 06/01/2012 | 53 | Response to motion *for judgment upon the administrative record* (related document(s) 41 , 42 ). Reply due by 8/7/2012. Filed by Stephen Carl Tosini of U.S. Department of Justice on behalf of United States. (Attachments: # 1 Exhibit PD 5 - initiation letter - JBF, # 2 Exhibit PF 7 - initiation letter - DuPont, # 3 Exhibit PD 8 - notice of initiation, # 4 Exhibit PD 70 - cost verification report, # 5 Exhibit PD 73 - preliminary analysis memo, # 6 Exhibit PD 86 - JBF administrative case brief, # 7 Exhibit PD 93 - I&D memo, # 8 Exhibit PD 96 - final results)(Tosini, Stephen) (Entered: 06/01/2012) |
| 06/01/2012 | 54 | Response *in opposition* to motion *for judgment on the agency record* (related document(s) 41 , 42 ). Reply due by 8/7/2012. Filed by Jeffrey Ian Kessler of Wilmer, Cutler, Pickering, Hale & Dorr, LLP on behalf of DuPont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., Toray Plastics (America), Inc.. (Attachments: # 1 Proposed Order, # 2 Exhibit Prelim Results Analysis Memo re: JBF, # 3 Exhibit JBF Case Brief, # 4 Exhibit Petitioners' Rebuttal Brief, # 5 Exhibit I&D Memo, # 6 Exhibit Letter from Galvin & Mlawski re: Liquidation)(Kessler, Jeffrey) (Entered: 06/01/2012) |
| 06/27/2012 | 55 | Motion to stay *and leave to amend complaint*. Responses due by 7/16/2012. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC.(Mlawski, Jack) (Entered: 06/27/2012) |
| 07/05/2012 | 56 | Consent Motion for extension of time until 7/25/2012 to respond to motion *for stay and to amend complaint* (related document(s) 55 ). Responses due by 7/24/2012. Filed by Stephen Carl Tosini of U.S. Department of Justice on behalf of United States.(Tosini, Stephen) (Entered: 07/05/2012) |
| 07/05/2012 | 57 | Order entered on 7/5/2012 granting Motion for extension of time to respond to motion. ORDERED that defendant and defendant-intervenors may respond to plaintiff's motion no later than 7/25/2012. ORDERED that if the Court denies plaintiff's motion for stay, then plaintiff's 56.2 brief is due no later than 30 days after the date of denial (Related Doc # 56 ). (Cheevers, Casey) (Entered: 07/05/2012) |
| 07/23/2012 | 58 | Response to motion *to amend complaint and for a stay* (related document(s) 55 ). Filed by Stephen Carl Tosini of U.S. Department of Justice on behalf of United States.(Tosini, Stephen) (Entered: 07/23/2012) |
| 07/25/2012 | 59 | Consent Motion for leave to *substitute amended response to motion to amend complaint and to stay* (related document(s) 55 ). Responses due by 8/13/2012. Filed by Stephen Carl Tosini of U.S. Department of Justice on behalf of United States. (Attachments: # 1 Exhibit Response to Motion for Leave to Amend Complaint and to Stay)(Tosini, Stephen) (Entered: 07/25/2012) |

23

| | | |
|---|---|---|
| 07/25/2012 | 60 | Response to motion *to amend complaint and stay the case* (related document(s) 55 ). Filed by Jeffrey Ian Kessler of Wilmer, Cutler, Pickering, Hale & Dorr, LLP on behalf of DuPont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., Toray Plastics (America), Inc.. (Attachments: # 1 Proposed Order)(Kessler, Jeffrey) (Entered: 07/25/2012) |
| 07/26/2012 | 61 | Order entered on 7/26/2012 granting defendant's consent motion to substitute its opposition to the motion to amend the complaint and to stay further proceedings filed on July 23, 2012 (Related Doc # 59 ). (Love, Cynthia) (Entered: 07/26/2012) |
| 07/26/2012 | 62 | Amended Response to motion *to amend complaint and for a stay* (related document(s) 55 ). Filed by Stephen Carl Tosini of U.S. Department of Justice on behalf of United States.(Love, Cynthia) (Entered: 07/26/2012) |
| 08/03/2012 | 63 | Order entered on 8/3/2012 granting Plaintiff's motion to stay the proceedings. Ordered that Plaintiff's motion for leave to amend its complaint is denied; it is further Ordered that the above captioned case is stayed pending the outcome in Union Steel; and it is further Ordered that the parties shall file a proposed amended scheduling order within 30 days of the final judgment in Union Steel (Related Doc # 55 ). (Love, Cynthia) (Entered: 08/03/2012) |
| 10/01/2012 | 64 | Motion to withdraw substitute attorney *for DuPont Teijin Films only*. Responses due by 10/22/2012. Filed by Jeffrey Ian Kessler of Wilmer, Cutler, Pickering, Hale & Dorr, LLP on behalf of DuPont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., Toray Plastics (America), Inc.. (Attachments: # 1 Proposed Order)(Kessler, Jeffrey) (Entered: 10/01/2012) |
| 10/23/2012 | 65 | Consent Motion for extension of time until 10/23/2012 to respond to motion *to withdraw out of time and proposed response* (related document(s) 64 ). Responses due by 11/13/2012. Filed by Stephen Carl Tosini of U.S. Department of Justice on behalf of United States.(Tosini, Stephen) (Entered: 10/23/2012) |
| 10/24/2012 | 66 | Order entered on 10/24/2012,Granting consent motion for extension of time to until 10/23/2012 respond to motion. (Related Doc # 65 ). (Taronji, Steve) (Entered: 10/24/2012) |
| 10/24/2012 | 67 | Response *does not oppose* to motion *withdraw substitute attorney for DuPont Teijin Films only*. (related document(s) 64 ). Filed by Stephen Carl Tosini of U.S. Department of Justice on behalf of United States.(Taronji, Steve) (Entered: 10/24/2012) |
| 10/24/2012 | 68 | Order entered on 10/24/2012, Granting motion to withdraw substitute attorney. ORDERED that Ronald I. Meltzer, Patrick J. McLain, David M. Horn, and Jeffrey I. Kessler will no longer represent DuPont Teijin Films in this action. ORDERED that Ronald I. Meltzer, Patrick J. McLain, David M. Horn, and Jeffrey I. Kessler will continue to represent Mitsubishi Polyester Film, Inc., SKC, Inc., and Toray Plastics (America), Inc. in this action. (Related Doc # 64 ). (Taronji, Steve) (Entered: 10/24/2012) |
| 08/14/2013 | 69 | Motion for test case designation . Responses due by 9/3/2013. Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC.(Mlawski, Jack) (Entered: 08/14/2013) |
| 08/14/2013 | 70 | Joint Motion to Amend Scheduling Order . Responses due by 9/3/2013. Filed by Jack David Mlawski of Galvin & Mlawski, David Moses Horn of Wilmer, Cutler, Pickering, Hale & Dorr, LLP, Stephen Carl Tosini of U.S. Department of Justice on behalf of All Parties.(Mlawski, Jack) (Entered: 08/14/2013) |
| 08/27/2013 | 71 | Response to motion *to designate as test case* (related document(s) 69 ). Filed by Stephen Carl Tosini of U.S. Department of Justice on behalf of United States.(Tosini, Stephen) (Entered: 08/27/2013) |
| 08/28/2013 | 72 | Motion to withdraw substitute attorney *for Toray Plastics (America), Inc.*. Responses due by 9/16/2013. Filed by Jeffrey Ian Kessler of Wilmer, Cutler, Pickering, Hale & Dorr, LLP on behalf of DuPont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., Toray Plastics (America), Inc..(Kessler, Jeffrey) (Entered: 08/28/2013) |
| 08/28/2013 | 73 | Response to motion *for test case designation* (related document(s) 69 ). Filed by Jeffrey Ian Kessler of Wilmer, Cutler, Pickering, Hale & Dorr, LLP on behalf of DuPont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc., Toray Plastics (America), Inc..(Kessler, Jeffrey) (Entered: 08/28/2013) |
| 09/06/2013 | 74 | Response to motion *to withdraw* (related document(s) 72 ). Filed by Stephen Carl Tosini of U.S. Department of Justice on behalf of United States.(Tosini, Stephen) (Entered: 09/06/2013) |
| 09/20/2013 | 75 | Order entered on 9/20/2013 denying Motion for test case designation (Related Doc # 69 ). (Love, Cynthia) (Entered: 09/20/2013) |
| 09/20/2013 | 76 | Joint amended scheduling Order entered on 9/20/2013 (Related Doc # 70 ).Plaintiff shall file its reply by October 24, 2013; the parties shall file a tabbed and paginated Joint Appendix by November 4, 2013. Motion for oral argument on the motion for judgment on the agency record shall be made in accordance with Rule 56.2(c). (Love, Cynthia) (Entered: 09/20/2013) |
| 09/20/2013 | 77 | Order entered on 9/20/2013 granting Motion to withdraw substitute attorney (Related Doc # 72 ).Ordered that the withdrawal of Ronald I. Meltzer, Patrick J. McLain, David M. Horn, and Jeffrey I. Kessler as counsel of record for Toray Plastics (America), is effective immediately; and it is further Ordered that Toray Plastics (America), shall have 30 days from the date of this order to retain substitute counsel. (Love, Cynthia) (Entered: 09/20/2013) |
| 10/21/2013 | 78 | Confidential Reply (related document(s) 54 , 53 ). Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC. (Mlawski, Jack) (Entered: 10/21/2013) |
| 10/21/2013 | 79 | Public Reply (related document(s) 54 , 53 ). Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC.(Mlawski, Jack) (Entered: 10/21/2013) |
| 10/23/2013 | 80 | Form 11 Notice of Appearance . Filed by George Hratch Kivork of U.S. Department of Commerce on behalf of United States.(Kivork, George) (Entered: 10/23/2013) |

5/29/2014 3:29 PM

| 11/01/2013 | 81 | Joint Appendix *Confidential* (related document(s) 42 ). Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC. (Mlawski, Jack) (Entered: 11/01/2013) |
| 11/01/2013 | 82 | Joint Appendix *Public* (related document(s) 41 ). Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC. (Mlawski, Jack) (Entered: 11/01/2013) |
| 11/07/2013 | 83 | Notice of Supplemental Authority filed. . Filed by Stephen Carl Tosini of U.S. Department of Justice on behalf of United States. (Attachments: # 1 Slip Opinion 13-131)(Tosini, Stephen) (Entered: 11/07/2013) |
| 01/08/2014 | 84 | Order entered on 1/8/2014. Confidential Version of Slip opinion: 14-2. (related document(s) 41 , 42 ).(Love, Cynthia) (Entered: 01/08/2014) |
| 01/08/2014 | 85 | Confidential Judgment Order entered on 1/8/2014.Re: Confidential Version of Slip opinion: 14-2. (related document(s) 84 ).(Love, Cynthia) (Entered: 01/08/2014) |
| 01/08/2014 | 86 | Letter filed by the Honorable Judith M. Barzilay concerning *public version of Slip Op. 14-2. Responses due by C.O.B. 1/17/2014*. (Love, Cynthia) . (Entered: 01/08/2014) |
| 01/22/2014 | 87 | Order entered on 1/22/2014. Public Slip Op. 14-2. (related document(s) 85 , 84 ).(Taronji, Steve) (Additional attachment(s) added on 1/22/2014: # 1 Judgment)(# 2 Web Pages Cited in the Opinion (Page 2)) (Taronji, Steve). (Entered: 01/22/2014) |
| 01/23/2014 | 88 | Form 11 Notice of Appearance . Filed by Devin Scott Sikes of U.S. Department of Commerce on behalf of United States.(Sikes, Devin) (Entered: 01/23/2014) |
| 01/23/2014 | 89 | Form 18A Notification of Termination of Government Attorney Access to Business Proprietary Information on behalf of *George Kivork*. Filed by Devin Scott Sikes of U.S. Department of Commerce on behalf of United States. (Sikes, Devin) (Entered: 01/23/2014) |
| 03/07/2014 | 90 | Notice of Appeal of judgment of 1/8/2014 filed. (related document(s) 85 , 84 ). Filed by Jack David Mlawski of Galvin & Mlawski on behalf of JBF RAK LLC.(Mlawski, Jack) (Entered: 03/07/2014) |
| 03/13/2014 | 91 | *Plaintiff's Appeal of Slip Op. 14-2* docketed on 3/13/2014 by the CAFC as appeal no. 2014-1354 (related document(s) 90 ). (Taronji, Steve) (Entered: 03/13/2014) |

FOR OFFICIAL FILE

**UNITED STATES DEPARTMENT OF COMMERCE**
**International Trade Administration**
Washington, D.C. 20230

A-520-803
POR: 11/06/2008-10/31/2009
Public Document
O6: AH

DATE: April 18, 2011

MEMORANDUM TO: Ronald K. Lorentzen
Deputy Assistant Secretary
for Import Administration

3³⁹

FROM: Christian Marsh  CAM
Deputy Assistant Secretary
for Antidumping and Countervailing Duty Operations

SUBJECT: Antidumping Duty Administrative Review of Polyethylene
Terephthalate Film, Sheet, and Strip from the United Arab
Emirates: Issues and Decision Memorandum for the Final Results

## I. **Summary**

We have analyzed the comments of the interested parties in the antidumping duty administrative review of polyethylene terephthalate film (PET Film) from the United Arab Emirates (UAE). As a result, we have made changes to the margin calculation for JBF RAK LLC (JBF). No comments were received for FLEX Middle East FZE (FLEX). We recommend that you approve the positions described in the "Discussion of the Issues" section of this memorandum.

## II. **Background**

On December 17, 2010, the Department of Commerce (the Department) published the preliminary results of the antidumping duty administrative review of PET Film from the UAE. See Polyethylene Terephthalate Film, Sheet, and Strip From the United Arab Emirates: Preliminary Results of Antidumping Duty Administrative Review, 75 FR 78968 (December 17, 2010) (Preliminary Results). This administrative review covers two producers/exporters of the subject merchandise: JBF and FLEX. The period of review is November 6, 2008, through October 31, 2009.

The Department received a timely case brief from JBF on February 28, 2011. Dupont Teijin Films, Mitsubishi Polyester Film, Inc., SKC, Inc. and Toray Plastic (America), Inc. (collectively Petitioners) filed a timely rebuttal brief with the Department on March 8, 2011. Based on our analysis of the comments received, the weighted average margin for JBF changed from the calculated margin in the Preliminary Results. The revised margin is published in the accompanying Federal Register notice. There has been no change to the weighted average margin calculated in the Preliminary Results for FLEX.

000093.



## III. List of the Issues

Below is the complete list of issues in this review on which we received comments from interested parties.

Comment 1:    Sample Transactions
Comment 2:    Values Reported for Average Cost of Manufacturing
Comment 3:    Transactions Outside the Ordinary Course of Trade
Comment 4:    Matching Criteria
Comment 5:    Zeroing

## IV. Discussion of the Issues

**Comment 1:** Sample Transactions

In a minor corrections letter submitted prior to verification, JBF identified a U.S. sale that it claims should have been reported as a sample sale in previous questionnaire responses. During verification, JBF stated the customer paid for production of the film and JBF paid for transportation expenses, insurance and handling (thus implying that the customer received a delivered product for an ex-factory price). JBF requests that the final results exclude this sale from the margin calculation. JBF claims that the manner in which the merchandise was shipped, and the fact that freight expenses were significantly more than those reported for other sales, demonstrates that it was a sample sale. Specifically, JBF claims it paid to ship a full container, but only packed about one quarter of the container in order to reach the customer on time.

Petitioners did not comment on this issue.

**Department Position:**

While the respondent is correct that the per-unit freight it paid for this sale was higher than typical, neither this fact, nor the others cited by JBF, provide a basis for excluding the sale. The customer paid for the merchandise in question. Consistent with our practice, the Department may exclude from its dumping analysis those transactions in which a respondent can demonstrate that no consideration was exchanged for the merchandise. See NSK Ltd. v. United States, 115 F.3d 965, 972 (Fed. Cir. 1997). However, the Department is not obligated to exclude any transaction from the U.S. sales database merely because any such transaction is labeled as a sample sale. See NTN Bearing Corp. of Am. v. United States, 27 C.I.T. 129, 166 (June 2003) (finding the Department's decision to include the samples designated by the company as samples in its U.S. sales databases to be reasonable). Accordingly, we are not excluding this sale from our calculation.

**Comment 2:** Values Reported for Average Cost of Manufacturing

JBF claims that the Department incorrectly used different U.S. and home market average cost of manufacturing figures for the same products, which resulted in an incorrect calculation of the

"difference in merchandise adjustments" and the weighted-average margin. JBF argues that the Department should correct this error in the final results.

Petitioners did not comment on this issue.

**Department Position:**

The computer program used to calculate home market sales and cost values did not transfer the correct dataset for use in the program used to calculate the margin. As a result, different variable cost figures were assigned to identical U.S. and home market products. We have corrected this error in the program used in the final results.

**Comment 3:** Transactions Outside the Ordinary Course of Trade

JBF argues that there are four home market sales that should be excluded from the Department's calculations because they are outside the ordinary course of trade (OCT). JBF notes that for these sales: (1) the sales quantity was extremely low; (2) the sale price was abnormally high; (3) the customer to whom these sales were made was not a "normal" customer, because the customer purchased much lower quantities than the average customer purchased; and (4) the profit from these sales was abnormally high. JBF contends that using these sales would produce "irrational and unrepresentative results," and therefore should be excluded when determining normal value (NV). JBF cited Lightweight Thermal Paper From Germany: Notice of Preliminary Results of Antidumping Duty Administrative Review, 75 FR 77831 (December 14, 2010) (Thermal Paper), and Gray Portland Cement and Clinker from Mexico: Notice of Final Results of Antidumping Duty Administrative Review, 71 FR 2909 (January 18, 2006) (Mexican Cement) as examples of cases in which the Department reviewed such factors as sales volume, number of sales, price and profitability, customers, and shipping arrangements in deciding that transactions were outside the OCT.

Petitioners argue that JBF has not provided sufficient evidence that these sales were outside the OCT. Petitioners claim JBF reported several sales of similarly low quantity in its sales datasets, and that the sales prices for these transactions are not abnormally high when compared with other transactions. Petitioners contend that, given the small number of sales for these products, there is not enough information to support JBF's claim that profits for the sales in question were aberrational.

**Department Position:**

The Department does not find these sales to have been made outside the OCT. We first note that only one of the cases cited by JBF, Mexican Cement, excluded sales as outside the OCT. In our analysis in Mexican Cement, we referred to a number of factors in addition to the low sales quantity, including the type of customer, the special sales program involved, and questionable demand for the merchandise in the home market. In Thermal Paper, the Department discussed only the possibility of excluding sales because of low quantities and high prices. Ultimately, we decided not to exclude the sales because there was no evidence on the record to demonstrate that the sales could be considered extraordinary in any other aspect because they were not based on

transactions involving off-quality merchandise, did not involve merchandise produced according to unusual product specifications, and did not involve merchandise sold at aberrational prices or with abnormally high profits.

The Department finds nothing striking about the sales in question that would justify their exclusion. While the quantities in the four sales are below average, they are part of a smooth distribution of quantities from low to high. These sales are among several sales that involved similarly small amounts. Accordingly, the Department does not find that the quantity involved in these four sales was aberrational compared to other sales made by JBF. The quantities involved in these sales are not extraordinary, but fall within the ordinary course of trade in the home market. Additionally, we find there were too few transactions of the CONNUM actually selected for matching to analyze accurately whether the sales prices were aberrational.[1] Profit for these sales was higher than average and higher than for all other sales; however, as with quantity, profit is smoothly distributed from low to high providing no indication of a standard or normal profit rate or even range of rates. While prices and profit are higher than the other home market sales reported, and quantities lower, the variations in prices, quantities, and profits reflect JBF's normal business practice of sales and are not "extraordinary" under 19 CFR 351.102(b)(35) or "aberrational" (to use the language of Thermal Paper). For a more detailed discussion regarding the Department's analysis, including comparisons of business proprietary information, see Memorandum to Barbara E. Tillman, Director AD/CVD Operations, Office 6, from Mark Hoadley, Program Manager, AD/CVD Operations, Office 6, "Antidumping Duty Administrative Review of Polyethylene Terephthalate (PET) Film, Sheet and Strip from the United Arab Emirates (UAE): Final Analysis Memorandum for JBF RAK LLC," April 18, 2011.

Importantly, JBF has not given the Department any reason to consider that these transactions differ from other sales in any respect, other than quantity, beyond its own pricing decisions and the willingness of the customers for these sales to pay higher prices. In other words, it has not demonstrated there is a reason why one would expect, a priori, prices and profits for these sales to be higher, such as the unusual product or sales aspects examined in Mexican Cement or Thermal Paper. JBF has not shown that these sales involve off-quality merchandise, were produced according to unusual product specifications, were sold pursuant to unusual terms of sale, or were sold to an affiliated party at a non-arm's length price. Accordingly, the Department finds that JBF has not established that these sales are outside the OCT and, therefore, we have not excluded these sales from our analysis.

**Comment 4:** Matching Criteria

JBF argues that the Department incorrectly matched U.S. and home market products and should have chosen different matches based on surface treatment. Primarily, JBF's arguments are concerned with sales of "corona" film, an electric charge applied to film that makes it more suitable for certain applications. Because corona film is not coated, JBF argues it should be matched to sales of "plain" film, when other corona products are not available. The

---

[1] JBF argues that four sales were outside the OCT. Only two of these sales are used for matching purposes. Given the circumstances of JBF's sales, the other two sales are not used in any other aspect of our calculations.

Department's methodology, however, considers plain and coated films to be equally similar to corona films in terms of physical characteristics, and selected coated products as the best matches for some sales of corona film. JBF offered several other alternative matches for other U.S. products, based on various JBF claims regarding surface treatment.

Petitioners argue that JBF did not avail itself of the opportunity to address the comparability of surface treatments when it initially responded to the Department's questionnaire. The Department ranked surface treatments in order of similarity in the questionnaire. Petitioners argue that, if JBF disagreed with the order in which surface treatments were listed, it should have requested a different ranking when it filed its initial questionnaire response. Petitioners argue that JBF should not be allowed to change matching criteria now to achieve a preferred outcome. Petitioners also note that many of JBF's suggested alternative matches ignore matching criteria beyond physical characteristics, such as timing of sales.

**Department Position:**

We have not made JBF's suggested changes to the matching methodology. The model-matching hierarchy used in the Preliminary Results consists of four criteria (in order of importance): specification, thickness in microns, thickness code, and surface treatment. The model matching methodology used for these final results is the same as that used for the Preliminary Results, which is the same as that used in the investigation (excepting one minor difference, not relevant to this issue). When the Department has an established model-matching methodology in a proceeding, it may alter its established methodology if there is a reasonable basis for doing so. See NTN Bearing Corp. of America v. United States, 295 F.3d 1263, 1269 (CAFC 2002). With respect to changes to its model-matching methodology, the Department has applied a "compelling reasons" standard. See Ball Bearings and Parts Thereof from France, Germany, Italy, Japan, Singapore, and the United Kingdom: Final Results of Antidumping Duty Administrative Reviews, 70 FR 54711 (September 16, 2005) and accompanying Issues and Decision Memorandum (IDM) at Comment 2, and Antifriction Bearings (Other Than Tapered Roller Bearings) and Parts Thereof From France; et al.; Final Results of Antidumping Duty Administrative Reviews, 57 FR 28360 (June 24, 1992) at General Issues, Comment 1. Compelling reasons that warrant a change to the model-matching methodology may include, for example, greater accuracy in comparing foreign like product to the single most similar U.S. model, in accordance with section 771(16)(B) of the Tariff Act of 1930, as amended (the Act), or a greater number of reasonable price-to-price comparisons in accordance with section 773(a)(1) of the Act. See e.g., Stainless Steel Wire Rod from Sweden: Final Results of Antidumping Duty Administrative Review, 72 FR 17834 (April 10, 2007) and accompanying IDM at Comment 2.

JBF has not provided compelling reasons for the Department to consider changing the model match methodology from the methodology used in the Preliminary Results and the investigation. Under the Department's model matching hierarchy, we select a similar model for matching purposes according to: the list of physical characteristics, the order of the characteristics, and the ranking of choices under each characteristic. With respect to PET Film, the Department determined that four physical characteristics are needed to properly define the product: specification, micron, thickness code and surface treatment. Surface treatment, as the last listed characteristic, is the least consequential. Accordingly, only when all other characteristics are

equal will U.S. products be matched to home market products with different surface treatments. As Petitioners note, the slate of other suggested matches offered by JBF for other U.S. products are unacceptable matches for a number of reasons outside of physical characteristics, including the contemporaneousness of sales and cost of production. Specifically, all suggested alternatives by JBF were either not sold within the matching window for the U.S. sales or were sold below cost.

Also, its case brief is the first instance that JBF suggested a change in methodology, precluding the Department from the opportunity to collect additional necessary information to evaluate JBF's claims. Without such additional information, the Department has no basis to evaluate such arguments, beyond JBF's reference to one sentence in the cost verification report that mentions the apparent lack of materials or process involved in applying a corona surface to film.

**Comment 5:** Zeroing

JBF argues that the Department erred by applying its zeroing methodology, which is contrary to law and United States' World Trade Organization obligations. According to JBF, the Department's policy of assigning a margin value of zero to negative-margin transactions significantly distorts the actual level of dumping. JBF states that, had the Department not applied its zeroing methodology, it would have received a zero or de minimis dumping margin. JBF notes that on December 28, 2010, the Department published a Federal Register notice stating that it intended to change its antidumping methodology to eliminate the practice of zeroing. See Antidumping Proceedings: Calculation of the Weighted Average Dumping Margin and Assessment Rate in Certain Antidumping Duty Proceedings, 75 FR 81533 (December 28, 2010) (Proposed Modification).

Petitioners argue that the Department should continue to use its existing methodology. Petitioners note that the Department's proposal in the Federal Register stated that changes in methodology would be applicable "in all reviews pending before the Department for which a preliminary result is issued more than 60 days after the date of publication of the Department's Final Rule and Final Modification." See Proposed Modification, 75 FR at 81535. Petitioners argue that, because the Preliminary Results preceded this notice, there is no basis for the Department to alter its methodology in the present case.

**Department Position:**

We have not changed our calculation of the weighted-average dumping margin as suggested by the respondent for these final results of review.

Section 771(35)(A) of the Act defines "dumping margin" as the "amount by which the normal value exceeds the export price or constructed export price of the subject merchandise." Outside the context of antidumping investigations involving average-to average comparisons, the Department interprets this statutory definition to mean that a dumping margin exists only when NV is greater than export price (EP) or constructed export price (CEP). As no dumping margins exist with respect to sales where NV is equal to or less than EP or CEP, the Department will not permit these non-dumped sales to offset the amount of dumping found with respect to other

sales. The Court of Appeals for the Federal Circuit (CAFC) has held that this is a reasonable interpretation of the statute. See, e.g., Timken Co. v. United States, 354 F.3d 1334, 1342 (Fed. Cir. 2004) (Timken).

Section 771(35)(B) of the Act defines "weighted-average dumping margin" as "the percentage determined by dividing the aggregate dumping margins determined for a specific exporter or producer by the aggregate export prices and constructed export prices of such exporter or producer." The Department applies these sections by aggregating all individual dumping margins, each of which is determined by the amount by which NV exceeds EP or CEP, and dividing this amount by the value of all sales. The use of the term "aggregate dumping margins" in section 771(35)(B) of the Act is consistent with the Department's interpretation of the singular "dumping margin" in section 771(35)(A) of the Act as applied on a comparison-specific level and not on an aggregate basis. At no stage of the process is the amount by which EP or CEP exceeds the NV permitted to offset or cancel out the dumping margins found on other sales.

This does not mean that non-dumped sales are disregarded in calculating the weighted-average dumping margin. It is important to note that the weighted-average margin will reflect any non-dumped merchandise examined during the period of review: the value of such sales is included in the denominator of the weighted-average dumping margin, while no dumping amount for non-dumped merchandise is included in the numerator. Thus, a greater amount of non-dumped merchandise results in a lower weighted-average margin.

The CAFC explained in Timken that denial of offsets is a "reasonable statutory interpretation given that it legitimately combats the problem of masked dumping, wherein certain profitable sales serve to mask sales at less than fair value." Timken, 354 F.3d at 1343. As reflected in that opinion, the issue of so-called masked dumping was part of the policy reason for interpreting the statute in the manner interpreted by the Department. No U.S. court has required the Department to demonstrate "masked dumping" before it is entitled to invoke this interpretation of the statute and deny offsets to dumped sales. See, e.g., Timken, 354 F.3d at 1343; see also NSK Ltd. v. United States, 510 F.3d 1375 (Fed. Cir. 2007).

In 2007, the Department implemented a modification of its calculation of weighted-average dumping margins when using average-to-average comparisons in antidumping investigations. See Antidumping Proceedings: Calculation of the Weighted-Average Dumping Margin During an Antidumping Investigation; Final Modification, 71 FR 77722 (December 27, 2006) (Final Modification). With this modification, the Department's interpretation of the statute with respect to non-dumped comparisons was changed within the limited context of investigations using average-to average comparisons. The Department's interpretation of the statute was unchanged in other contexts. Recognizing that the change in the Department's interpretation of the statute was limited to investigations using average-to average comparisons, the CAFC upheld the Department's interpretation as applied in an investigation using average-to average comparisons as a reasonable interpretation of ambiguous statutory language. See U.S. Steel Corp. v. U.S., 621 F.3d 1351 (Fed. Cir. 2010) Rehearing, en banc, denied by United States Steel Corp. v. United States, 2011 U.S. App. LEXIS 4499 (Fed. Cir. 2011). In addition, the CAFC recently upheld, as a reasonable interpretation of ambiguous statutory language, the Department's continued application of zeroing in the context of an administrative review completed after the

implementation of the Final Modification. See SKF USA Inc. v. United States, 630 F.3d 1365 (Fed. Cir. 2011). In that case, the Department had explained that the changed interpretation of the ambiguous statutory language was limited to the context of investigations using average-to-average comparisons and was made pursuant to statutory authority for implementing an adverse WTO report.

Further, the Proposed Modification, cited by the respondent, does not provide a basis for changing the Department's approach for calculating weighted-average dumping margins in the instant administrative review. See Proposed Modification. The Proposed Modification is only a proposal that remains subject to review of comments from the public and statutory consultation requirements involving congressional committees, among others. See 19 U.S.C. § 3533(g)(1). It does not provide legal rights or expectations for parties in this review. The Proposed Modification further makes clear that, in terms of timing, any changes in methodology will be prospective only, and "will be applicable in . . .all {administrative} reviews pending before {Commerce} for which a preliminary results is issued more than 60 business days after the date of publication of {Commerce's} Final Rule and Final Modification." Proposed Modification, 75 FR at 82535. Additionally, the Proposed Modification would not apply to this administrative review because, normally, "{a} final rule or other modification . . . may not go into effect before the end of the 60-day period beginning on the date which consultations [between the Trade Representative, heads of the relevant departments or agencies, and appropriate congressional committees] under paragraph 1(E) begin . . ." 19 U.S.C. § 3533(g)(2). Completion of these final results is prior to the effective date of the final rule; as such, any change in the treatment of non-dumped sales, pursuant to the Proposed Modification, if implemented, would not apply to this review.

Accordingly, and consistent with the Department's interpretation of the Act described above, in the event that any of the export transactions examined in this review are found to exceed NV, the amount by which the EP exceeds NV will not offset the dumping found with respect to other transactions.

## V.  Recommendation

We recommend adopting the above positions.  If these recommendations are accepted, we will publish the final results of this review and the final dumping margins for all companies in the Federal Register.


Agree __✓__          Disagree_____


Ronald K. Lorentzen
_____
Ronald K. Lorentzen
Deputy Assistant Secretary
  for Import Administration


April 18, 2011
_____
Date

NOTE: This order is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**JBF RAK LLC,**
*Plaintiff-Appellant,*

v.

**UNITED STATES,**
*Defendant-Appellee,*

AND

**MITSUBISHI POLYESTER FILM, INC., SKC INC,**
*Defendants.*

---

2014-1354

---

Appeal from the United States Court of International Trade in No. 11-00141. Senior Judge Judith M. Barzilay.

---

**ON PETITION FOR HEARING EN BANC**

---

Before RADER, *Chief Judge,* NEWMAN, LOURIE, DYK, PROST, MOORE, O'MALLEY, REYNA, WALLACH, TARANTO, and CHEN, *Circuit Judges.*[*]

PER CURIAM.

2                                                      JBF RAK LLC v. US

# O R D E R

Appellant JBF RAK LLC filed a petition for hearing en banc contemporaneously with a motion for a 30-day extension of time to file its initial brief pending the determination of its petition for hearing en banc.

Upon consideration thereof,

IT IS ORDERED THAT:

(1) The petition for hearing en banc is denied. The appeal will be heard by a panel. *See* Fed. Cir. R. 35(a)(1).

(2) JBF RAK LLC's motion for an extension of time to file its initial brief is granted. The brief is due 30 days of the date of filing of this order.

FOR THE COURT

May 21, 2014                   /s/ Daniel E. O'Toole
Date                               Daniel E. O'Toole
                                      Clerk of Court

---

    *    Circuit Judge Hughes did not participate.

**FORM 30. Certificate of Service**

# UNITED STATES COURT OF APPEALS
## FOR THE FEDERAL CIRCUIT

# CERTIFICATE OF SERVICE

I certify that I served a copy on counsel of record on
by:

Jun 19, 2014

☐ US mail
☐ Fax
☐ Hand
☒ Electronic Means
    (by email or CM/ECF)

JACK MLAWSKI

/s/ Jack Mlawski

Name of Counsel                             Signature of Counsel

Law Firm   Galvin & Mlawski

Address   245 Fifth Av, Suite 1902

City, State, ZIP   New York, NY 10016

Telephone Number   212 679-1500

FAX Number   212 971-0417

E-mail Address   jm@customslaw.com

NOTE: For attorneys filing documents electronically, the name of the filer
under whose log-in and password a document is submitted must be preceded
by an "/s/" and typed in the space where the signature would otherwise appear.
Graphic and other electronic signatures are discouraged.

**CERTIFICATE OF COMPLIANCE W1TH TYPE-VOLUME
LIMITATION,
TYPEFACE REQUIREMENTS, AND TYPE STYLE REQUIREMENTS**

1. This brief complies with the type-volume limitation of Federal Rule
Appellate Procedure 32(a)(7)(B).

The brief contains *3807* words, excluding the parts of the brief exempted
by Federal Rule of Appellate Procedure 32(a)(7)(B)(iii).

2. This brief complies wiih the typeface requirements of Federal Rule
Appellate Procedure 32(a)(5) and the type style requirements of Federal
Rule Appellate Procedure 32(a)(6).

The brief has been prepared in a proportionaly spaced typeface using
Microsoft Word in Times New Roman 14 point font size.

<u>/s/ Jack Mlawski</u>
JackMlawski
Counsel for Plaintiff-Appellant

June 19, 2014